KENNEDY'S ADMINISTRATRIX, Plaintiff in Error, *vs.* HAMMOND & HALL, Defendants in Error.

A. conveyed to B. a mill and leasehold, to secure to C. the payment of two notes. After the first and before the second note matured, the property was advertised and sold, pursuant to the terms of the deed of trust, and D. became the purchaser. After the sale, D. tendered to B. the amount of the note which had actually matured. and produced the receipt of the asssignees of the grantor for the balance of his bid, and demanded a deed. B. refused to deliver a deed, and when the second note became due, again advertised the property for sale. D. applied for and obtained an injunction. When the injunction was dissolved, the lease had been declared forfeited and the mill burned down, so that the mortgaged interest would not have sold for enough to defray the expenses of a sale. *Held,*

1. D. had no right to a deed until he tendered the amount of both notes, although one of them had not matured.

2. Upon the dissolution of the injunction, the damages were properly assessed at the whole amount of the notes, with interest, &c., even though the makers of the notes were solvent.

### Error to St. Louis Circuit Court.

On November 6th, 1847, James Kennedy filed his bill of complaint in the Circuit Court for the county of St. Louis, sitting in equity, against the defendants, setting forth that Elisha Hall, Judson Allen and Joshua J. Childs, by their deed dated May 15th, 1846, conveyed to John R. Hammond, certain ground, with a steam saw mill thereon, in the city of St. Louis, leased by them from William Chambers for ten years, together with the lumber, tools, &c., on the premises, in trust

to secure the payment of two certain notes, made by said Hall, Allen and Childs to the defendant, Hall, one for $1030, dated April 1st, 1846, and payable twelve months after date, and the other for the same sum, and of the same date, but payable eighteen months after date; with power to sell said property, or any of it, in case default was made in the payment of either of said notes at its maturity, at auction, in a certain manner in said deed provided for; that said first named note was not paid at maturity, and thereupon, said Hammond sold said property, in the manner provided for in said deed, and at said sale the complainant, Jas. Kennedy, became the purchaser, at the price of $2,800. The sale was made June 7th, 1847. That thereupon, as soon thereafter as said Hammond was ready to deliver a deed, said Kennedy tendered to him a sum of money sufficient to pay said first named note, and interest, and all expenses of the execution of the trust, and the receipt for the balance of the $2,800 from Primus Emerson and Joshua J. Childs, and demanded of said Hammond a deed of conveyance of said property, which the said Hammond had at the time, executed, and ready for delivery, but said Hammond refused to receive said tender, and deliver said deed, and insisted that he should be paid the whole amount of both of said notes; that prior to said sale, said Hall and Allen had assigned and transferred said leasehold property to Primus Emerson, and at the time of said sale, and said tender, said Childs and Emerson were the sole owners of said leasehold, which was known to said Hammond; that afterwards, when said second note became due, said Hammond again advertised said property to be sold October 6th, 1847, under said deed of trust; and by reason of the premises, the complainant prayed for an injunction of said advertised sale, and that said Hammond be decreed to make and deliver to him a deed of conveyance of said property, by virtue of his said purchase thereof, and tender aforesaid, he being ready and willing, as he always had been, to satisfy his bid to said Hammond as aforesaid, for said property.

An injunction of said sale was granted October 6th, 1847, with the usual security bond. The defendants filed their several answers to said bill, admitting the allegation of facts set forth in the bill, substantially, but setting up that no such evidence of the alleged sale to Kennedy was made as required by the statute of frauds ; that the property was indivisible, and that its transfer by Hall and Allen to Emerson was made subject to the deed of trust, and that Childs and Emerson were of doubtful circumstances at the time of the sale, and that their receipt for the balance of the $2,800, bid by Kennedy for the property, was a fraudulent contrivance with Kennedy for depriving the defendant, Hall, of his security, by said property, for the payment of said notes. The deed of trust is filed as an exhibit, and in the answer of said Hall, the following provision therein is set forth, to-wit : that upon a sale thereunder, said Hammond should receive the proceeds of the sale, and out of them pay, first, the expenses of executing the trust ; next, the sum due on said notes, or either of them, and lastly, should pay the balance, if any, to the grantors in said deed of trust.

To these answers the complainant filed a replication. Afterwards Kennedy died, and his wife, Amelia, being administratrix of his estate, was made complainant in his stead.

Upon the hearing, it was admitted that Kennedy, within a proper time after the sale, made to Hammond the tender alleged in the bill, and that Hammond knew, at the time, that Childs and Emerson were the sole owners of the property, as alleged, and that, at the time of such tender, Hammond had, executed and ready for delivery, a deed of conveyance of the property to Kennedy, but refused to deliver it, upon such tender, on the grounds that the tender should be of enough money to pay both notes, and interest accrued thereon, and the expenses of the execution of the trust.

Also, that the property was incapable of a division, and had to be sold together, and that, at the time of sale, and still, neither of said notes had been paid. Thereupon, to-wit,

December 2d, 1850, the court decreed a dissolution of the injunction and a dismissal of said bill, with costs, and, upon motion of defendants, an assessment of damages by a jury was ordered.

The complainant moved the court in proper time for a rehearing, which was refused by the court, to which refusal the complainant duly excepted.

Upon the inquiry of damages, had December 3d, 1851, evidence was by the defendants introduced showing the following facts, to-wit: that the premises were leasehold, under a lease from William Chambers to Elisha Hall, said Childs and Allen, for ten years, with a condition of forfeiture, for the non-payment of rent, as agreed; that in March or June, 1847, the premises were forfeited for the non-payment of rent, and shortly after, a suit was instituted to enforce said forfeiture, which was still pending; that upon the premises was a saw mill, driven by steam, which cost $5000 to $7000; that during the pendency of the injunction, the mill burned down, and that its remains were worth from $1200 to $1500, all of which had been disposed of or was dispersed; that the lessor, after the fire, which occurred in August, 1849, took possession of the premises, and let them to others, who have, ever since, had possession thereof. Isaac H. Sturgeon, a witness, testified that in his opinion an auction sale of the premises, in its then condition—a suit pending to declare a forfeiture—would not have brought the expenses of the sale, if any body would have given any thing at all.

Defendants further introduced evidence to show, that after the execution of the deed of trust, Allen sold his interest to Childs and Emerson, subject to the payment of the debt, mentioned in the deed of trust; afterwards Elisha Hall sold all his interest to Childs and Emerson, subject to said debt; Childs afterwards sold out to Emerson, and Emerson to John Maguire, in like manner, subject to said debt. All these transfers were before the sale, except the last, which was shortly after; that Maguire had been in possession before the fire,

and had rented them for $2000 per annum, and procured insurance and received the insurance upon it. The deed of trust contained a stipulation that the mill should be insured for the benefit of the creditor. It appeared that Kennedy purchased for Maguire, and that the present suit was for his benefit.

The notes were read to the jury, and it was proved that the printer's bill, for advertising the last sale, was eight dollars, and defendants' reasonable attorneys' fees for defending, were fifty dollars.

It was proved that Hall and Allen had all along been, and still were, worth $3000, and residents of the city of St. Louis. This was all the evidence. For the complainant, the following instructions were asked.

1. In this case, the defendant is not entitled to recover for damages to exceed ten per centum upon the amount of the debt.

2. The defendants are not entitled to any damages, by reason of the burning of the saw mill pending the injunction.

3. If the jury believe from the evidence, that the parties, or any of them, to the notes in evidence, are and have been solvent and good for the notes, then the defendant is entitled to recover only for what he has proved he has paid out and incurred properly in defending this suit, and advertising the sale in October, 1847.

4. If the jury believe from the evidence, that the lease from Chambers to Hall, Allen and Childs, was forfeited before the commencement of this suit, then the burning of the saw mill is no evidence of damage to the defendants.

5. If the jury believe from the evidence, that the parties, makers of the notes given in evidence, or any of them, are and have been continually solvent, then the burning of the mill, during the pendency of the injunction, is not sufficient evidence to enable the defendants to recover damages, by reason of such burning.

These instructions the court refused to give, to which decision of the court the complainant duly excepted.

22—VOL. XVI.

On behalf of the defendants, the following instruction was asked and given, to-wit :

" If the jury find that the premises mentioned in the deed of trust were, at the time fixed for the sale of said premises, which was enjoined, a sufficient security for the debt mentioned in said deed, and since the said time, and before the dissolution, said premises have been forfeited, destroyed and dispersed, so that the same could not be sold under said deed for a sum sufficient to defray the expenses of sale, then the jury ought to find the damages in this case to be the whole amount of the debt, and interest down to the present time, and such expenses as are proved to the satisfaction of the jury, to have been incurred in advertising the second sale under the trust deed, and for counsel fees in resisting the injunction."

To the giving of this instruction the complainant duly excepted. The jury assessed for the defendants, $3,385 33. The complainant, in due time, filed a motion to set aside said assessment, for the following reasons, to-wit :

1. Because the court erroneously admitted irrelevant testimony.

2. Because the court erred in giving the instruction asked for by the defendants.

3. Because the court erred in refusing to give the instructions asked for by the complainant.

4. Because the verdict is against evidence—the weight of evidence—against the law under the evidence, and is excessive.

The court refused to grant this motion, to which decision of the court the complainant duly excepted, and sued out a writ of error to this court, to reverse the final judgment of the court below, which was a dissolution of the injunction, a dismissal of the bill with costs, and that defendants recover of plaintiff the amount assessed by the jury.

*Todd & Krum,* for plaintiff in error.

I. The court erred in dissolving the injunction and dismissing the bill, for, by the terms of the contract of the parties, as set forth in the deed of trust, it was contemplated that there

might be a default in making payment of the first note, and if so, and the holder saw fit to avail himself of the power to sell the property to make the money before the other note became due, it was agreed in terms that out of the proceeds of the sale, should be paid, first, the expenses of the execution of the trust, next, not both notes, but the sum due on said notes, or either of them, and the balance over, if any, to the grantors.

The authorities cited for the doctrine that the proceeds might be applied to pay both notes, although not due, so far as known to us, are in cases of bonds and mortgages or other obligations, which become forfeited, or, technically, in full and present force, by a single default, with no words of agreement in restraint of, or inconsistent with a satisfaction of the whole debt, due or not. The case of *Salmon* v. *Clagett*, 3 Bland's Ch. Rep. 125, is a case different from this in its objects, and gave no occasion, it is insisted, for the remarks on pages 179 and 180, and, therefore, they are only a *dictum*, and as a *dictum*, they are not supported by the authorities referred to at the bottom of page 180. These cases, for the most part, are of the kind above stated, and one of them decides, in effect, that when words of restraint are used, their benefit and protection shall be enjoyed. 1 Maul. & Sel. 706; and another case of them, 4 J. Ch. R. 534, is decided under the express words of a statute, which shows that in New York it was deemed necessary for legislative action to authorize the doing of such an act as contended for by the defendants in this case, even in cases of bonds and mortgages in which are no words of restraint. The decision in 7 Paige Ch. Rep. 248, is in a case of a bond and mortgage, and under statutory regulations.

The practice in drawing deeds of trust, to secure the payment of money coming due at different times, when it is intended, that, in case of a single default, the whole money shall be due, or that the proceeds of sale shall be applied to the payment of the whole, whether due or not, is to so provide in express terms, in the deed of trust.

While the law permits sane men, of full age, to make contracts, their advantages and disadvantages, when free from fraud and lawful, no court has a right to interfere with, and least of all, to make and impose new and different contracts upon the parties, with additional benefits and advantages to the one side, and additional burdens and disadvantages to the other. To do it, is a mere usurpation of power, and a gratuitous guardianship. 19 Wend. Rep. 522. Wright's Ohio Rep. 523, 524.

As to the defence that the sale was not in writing, within the requirements of the statute of frauds and perjuries, it is insisted,

1. That Hammond's relations to the grantors and their assigns of the one part, and the defendant, Orris Hall, *cestui que trust*, of the other part, were, in principle, like those of an auctioneer or broker, so that a written memorandum of the sale, by him signed, was of the same effect as if signed by both parties. The deed of conveyance that, it is admitted, he actually executed to the complainant, and had, ready acknowledged, for a delivery to him, in pursuance, and according to the terms of the sale, was a full compliance with the statute.

As to the charge of fraud and insolvency in the answer, no evidence thereof was given, or offered upon the final hearing of the case, when the court decreed the dissolution, dismissal, and ordered an inquiry of damages.

II. The court erred in not giving the instructions Nos. 1, 2, 3, 4 and 5, asked for by the complainant. No. 1 ought to have been given, because the thing enjoined was money, in the contemplation of section 13 of the act regulating injunctions, p. 580, of the Revised Code of 1845.

No. 2 ought to have been given, because there was no evidence that the money was not collectable of the makers of the notes, notwithstanding the security by the deed of trust was nearly or quite destroyed by the loss of the saw mill.

If this case is not one of money enjoined within the contemplation of the statute, then No. 3 ought to have been given,

because the items of damage therein specified are the only ones of which there is evidence.

No. 4 ought to have been given, because a forfeiture of the lease was an annihilation of the security, and, therefore, the burning of the saw mill was of no damage to the security.

No. 5 ought to have been given, because if the notes were collectable of the makers, or any of them, the burning of the saw mill was merely a speculative damage at most, or, in other words, merely argumentative—not certain but contingent, not probable but only possible.

III.   The court erred in giving the instruction asked on behalf of the defendants,

1. Because of the reasons already given under point 1.

2. Because it is predicated on the supposition that after the injunction was obtained, the lease had been forfeited, whereas the only evidence thereof was that of Sturgeon, to-wit: "that it was forfeited in March or June before." This was a material fact in ascertaining the damages, and one for which the complainant was in nowise accountable.

IV.   The assessment is manifestly excessive and unjust, because it covers more than damages; it gives a satisfaction of the debt and damages, and the complainant is thus made to pay the debt of another, without a contract or any recourse or redress.   The statute only gives actual damages, not uncertain or contingent damages.

V.   The court below erred in the instructions given and refused, on the assessment of damages, touching the measu r thereof.   11 John. Rep. 136.   14 ib. 213.   17 Wend. Rep. 554.   3 Denio, 232.

*Field,* for defendants in error.

I.   The court below committed no error in its decree rendered on the hearing; for it is plain that the trustee was entitled to demand the amount of both notes, though only one had arrived at maturity.

It is the settled practice of chancery, in cases where the property is not susceptible of division, and the mortgage debt is

payable by instalments, to decree a sale of the whole mortgaged premises and pay off the whole debt, rebating for the interest on what may be due, but not yet payable. *Salmon* v. *Clagatt*, 3 Bland's Rep. 179, and the numerous cases there cited. *Knapp* v. *Burnham*, 11 Paige, 330.

Equity regards the money realized from the sale, as the primary fund for the payment of instalments not yet due, as the effect of the sale was to disincumber the estate of the mortgage, which before stood as a pledge for the debt. *Kimmell* v. *Willard*, 1 Douglass (Mich.) Rep. 217. See also, to same effect, *Mussina* v. *Bartlett*, 8 Port. Rep. 277. *Baker* v. *Lehman*, Wright, 522.

The rule is the same where the foreclosure is by the mortgagee under a power of sale. *Cox* v. *Wheeler*, 7 Paige, 248. *Hall* v. *Bamber*, 10 ib. 297. See 2 Rev. Stat. N. Y. p. 449, 450, 451.

The whole force of the complainant's case lies in the mistaken sense of the word "due," as used in the trust deed. It is apparent that the word, as there used, is not synonymous with "payable," but is intended as the adjective of debt, and of course includes all of both notes that was unpaid.

For an illustration of the different senses of the word "due," see *U. S. Bank* v. *Bank of N. C.*, 6 Pet. 29. *Hoyt* v. *Hoyt*. 1 Harr. N. J. Rep. 138.

II. There was no error in the action of the court below on the assessment of damages. The security for the debt was wholly lost by the injunction. The damages, therefore, ought properly to include the whole amount of the debt.

The provisions of the statute, limiting the amount of damages for the detention of money by injunction, are obviously not applicable here. Nor is it of any importance that the leasehold estate, covered by the deed of trust, had become forfeited at law, for it still subsisted in equity. Nor is it important, that the grantors in the trust deed are responsible for the trust debt. The defendants have a right to insist on the value of the security of which they have been deprived by the plaintiff.

The certainty of collecting the notes has been reduced to a chance.

Besides, it is unquestionably the duty of the plaintiff to exhaust the trust fund before resorting to the personal responsibility of the makers of the notes. For Maguire had become the real debtor, and he has no equity to turn us around upon those who are merely securities. Besides, if the notes ought now to be paid by the makers, the most that he could ask for, would be the right to have the notes transferred to him ; but this he did not ask for, and certainly, under the circumstances, it should not have been ordered.

The expenses of advertisement and counsel fees incurred in resisting the injunction, are proper to be allowed in damages. *Edwards* v. *Bodine,* 11 Paige, 223. *Aldrich* v. *Reynolds,* 1 Barbour, 613.

So, where, pending an injunction restraining a trust sale, the mortgagor took off the crops, the value of the crops was allowed in the damages on the dissolution of the injunction. *Aldrich* v. *Reynolds, ubi supra.*

RYLAND, Judge, delivered the opinion of the court.

From the above statement, the assessment of damages upon the dissolution of the injunction, becomes the main point for the consideration of this court.

This injunction cannot be said to be a proceeding to restrain the collection of money, in this case. Here, there was no judgment at law, the enforcement of which, by execution, was restrained and enjoined. Sections 11 and 13 of the act concerning injunctions, Rev. Code, 1845, are as follows :

" Sec. 11. No injunction shall issue in any case, until the complainant execute a bond with sufficient security, to the other party, in such sum as the court or judge shall deem sufficient to secure the amount, or other matter to be enjoined, and all damages that may be occasioned by such injunction, conditioned that the complainant shall abide the decision which shall be made thereon, and pay all sums of money, damages and costs,

that shall be adjudged against him, if the injunction shall be be dissolved.

" Sec. 13. Upon the dissolution of an injunction, in whole or in part, damages shall be assessed by a jury, or, if neither party require a jury, by the court; but if money shall have been enjoined, the damages thereon shall not exceed ten per centum on the amount released by the dissolution, exclusive of legal interest and costs."

On judgments at law, the dissolution of an injunction restraining the collection of the money, can allow of damages being assessed, at not more than ten per cent. That, in addition to legal interest. It is obvious that, in some cases, when injunctions have been granted to restrain an act from being done other than to collect money, such as the one in this present case, the damages may necessarily be much greater than the delay of receiving a sum of money for a few months could ordinarily produce ; and if damages only can be measured by per cent., in many cases there would be no criterion to ascertain them by. From the words of the act, too, we can see, that to restrain the collection of money, was not alone in the mind of the legislators. "Amount or other matter to be enjoined." Here, the complainant below did not seek to enjoin and restrain the defendants from the collection of a judgment or of a sum of money, but to prevent them from proceeding to sell property, the trust fund, and in that act, on the part of the complainant, serious injury may have been committed ; no less than the destruction in a greater or less degree of the value of the entire fund ; and can it be said, that ten per cent. is to be the amount of damages to be awarded, on the dissolution of an injunction in such cases ? Ten per cent. on what ? The original debt, for the payment of which the trust was made ? That will not do. Nor can the defendants be compelled to resort to the bond on which that injunction was originally allowed. The condition of the bond is, " pay all sums of money, damages and costs that shall be adjudged against him,

if the injunction be dissolved." Now, before suing on this bond, after dissolution, " the damages must be adjudged," and the non-payment of the amount adjudged forms the breach of the bond, so far as damages are concerned.

No argument can be drawn from the liability arising on the bond, in order to ascertain how, and what amount of damages must be adjudged. The bond is to secure the payment of the money when adjudged. The trust property in this case was sold at the maturity of the first note ; that note was for something over one thousand dollars.

The property was incapable of division. It was sold entire. The property was liable to be sold on the default of payment of either of the notes. The complainant's intestate, James Kennedy, became the purchaser, for $2,800. Shortly after the sale, he offered to Hammond, the trustee, one of the defendants below, the money to pay the amount of the first note, interest, and costs of advertising, and expenses of sale, &c., with a receipt from Emerson and Childs for the balance of the $2,800, and demanded a deed. Hammond refused to accept the tender, or to make a deed until the full amount of the debt secured by the property was paid. Now, what right had Emerson and Childs to receive the proceeds of this trust sale over the above notes ? Say the trust property, that is, the lease on it, had been assigned to them ; they took it, with the incumbrance upon it. Now, if this sale, on the maturity of the first note, passed the entire interest in the trust estate to the purchaser, free from the incumbrance of the second note, then that sale, if Emerson and Childs had a right to receive the amount over the first note, and expenses, was an injury to the *cestui que trust*, instead of a benefit ; for by it he lost the security for half the debt originally secured by this trust property.

At the maturity of the second note, steps were taken to sell the trust property ; then the complainant below steps in, and by his bill prevents the sale by injunction. Upon the dissolution of this injunction, the trust property being destroyed, partly

by fire, and the lease forfeited to the original lessor ; the trust property, I may say, lost to the *cestui que trust*, the damages in consequence were assessed at the amount of the debt originally secured and interest, and I think very properly.

Let us look at the facts in this case. Hall, Allen and Childs were the proprietors of the lease from Chambers, of the steam saw mill. They gave their deed of trust on the property to secure two notes. Afterwards, Hall sold all his interest in the premises to Childs and Emerson, expressly subject to the debt mentioned in the trust deed. Then Allen sells his interest in the property to Childs and Emerson, in like manner subject to the payment of the debt. Then Childs transfers the property to Emerson, subject to the payment of the debt. Lastly, Emerson transfers the property to John Maguire, in the same manner, subject to the debt ; so that Maguire becomes the owner of the property, and, in respect to the prior parties, is the principal debtor, and they merely his securities to the holder of the trust debt. Maguire procures Kennedy to bid off the property at the trustee's sale, and prosecutes the present suit for his own benefit, using Kennedy's name. Maguire has all along been in possession, receiving a large rent, $2,000 per year, until the mill was burned down in 1849. The deed of trust contained a stipulation that the premises should be insured, and that the insurance should stand as security to the creditor. Maguire collects the insurance for his own benefit. This, too, pending the injunction. So, too, pending the injunction, the landlord enters into the premises for a forfeiture, and Maguire suffers him to keep possession, and to make leases to other parties. Maguire, after making the trust debt his own, appropriates the security for the debt, to his own use, and insists that the original creditor, Orris Hall, shall look to the makers of the notes individually, and not to the trust fund.

The notes are still due; the trust property was sold; Maguire gets possession through Kennedy's purchase, pays no part of the debt for which the property was sold, rents out this

very trust property for $2,000 a year, and indemnifies Kennedy to prosecute this proceeding, in which the injunction was obtained. Had the second sale proceeded, the debt in all probability might have long ago been made out of the trust property. Pending this proceeding, that property has become lost to the *cestui que trust*, and, because the original makers of the notes are supposed to be worth $3,000, Maguire contends that the *cestui que trust* has not been damaged, and that he must look to the notes.

The case in 11 Johns. Rep. 136, *Yates* v. *Joyce*, has not any, or but slight application to any principle involved in this case. That case has the following head note: "Where A., the assignee of a judgment against B., which was a lien on the property of B., was about to take out execution, and seize a certain lot of land, and C., knowing this, pulled down and carried away certain buildings from off the land, whereby A. was deprived of the benefit of his judgment, &c., it was held, that A. might maintain an action on the case against C. for fraudulently removing the property of B., and converting it to his own use, with intent to defeat the judgment of A." The court, in the opinion given, said: "It is a sound principle, that where the fraudulent misconduct of a party occasions an injury to the private rights of another, he shall be responsible in damages for the same, and such is the case presented by the pleadings in this cause." In the case of *Lane* v. *Hitchcock*, 14 Johns. Rep. 213, the court remarked: "This case is supposed to be within the principles which governed the decision in *Yates* v. *Joyce*, 11 Johns. Rep. 136. In the case now before us, proof was offered on the trial, that the mortgagor was insolvent, and had no other property than the mortgaged premises, out of which the debt of the plaintiff might be satisfied; but there was no averment in the declaration to warrant such proof. These were material and indispensable facts, in order to give the plaintiff a right of action; and to allow this proof without the averment would take the defendant by surprise." The case in 17 Wend. 554, *Bank of*

*Rome* v. *Mott*, has still less bearing on the case now before us. So likewise the case of *Gardner* v. *Heartt*, 3 Denio, 232. The case in 19 Wend. 518, *Glover* v. *Payn*, was cited for the purpose of warning the courts not to take guardianship of adults as well as infants.

In the case of *Campbell and others* v. *Macomb and others* 4 Johns. Ch. Rep. 534, the Chancellor says : "The sale of the whole of the mortgaged premises was indispensable in this case, because they were not capable of being sold in parcels or of being divided, without manifest injury to all the parties concerned. When the whole premises are thus necessarily sold, it is the direction of the statute, (N. 'R. L. 490) that the court apply the proceeds of the sale, not only in payment of the interest, instalment, or portion due, but towards payment of the whole or residue of the demand, which hath not become due or payable, provided the same bears interest. But this provision is made from the necessity of the case, and more than is due is not to be raised out of the mortgaged premises, when that necessity does not exist. If the mortgagor, or the party holding the equity of redemption, comes before the sale, and brings in the amount due, with costs, there is no justice or equity in suffering the sale to proceed. The object of the decree was not to raise any part of the debt not due, yet the raising of the entire debt may become an unavoidable consequence of the sale, because the court, in order to raise what is due, is obliged to sell the whole of the mortgaged premises, as they happen to consist of one entire subject, incapable of being conveniently or safely divided."

The case in 1 Maule and Selwyn, 706, was one of construction of the terms of a defeasance. The defeasance is, " that the plaintiff shall not be at liberty to issue execution until default made in payment of the said sum by instalments, and in the manner before mentioned." It was held, that the failure to pay one instalment was such a default as permitted the execution to issue, and that for the whole debt.

In *Salmon* v. *Clagett*, 3 Bland's Chan. Rep. 179, the Chan-

cellor said : " Where a debt, secured by a mortgage, is made payable by instalments, it is well settled that the mortgage becomes forfeited by the non-payment of the first instalment, and may be foreclosed immediately after that time. If a bill be filed for that purpose, the debtor may, however, prevent a foreclosure or sale, by paying the instalment then due ; but if he fails to do so, then the mortgage may be entirely foreclosed, or so much of the property may be sold as will satisfy the sum due at that time ; and the decree will be allowed to stand, as a security for the other instalments as they become due—as in case of a judgment at law for an annuity. But if the mortgaged property cannot be conveniently or safely sold in parcels, then it must be disposed of entire, and the whole debt raised and paid, with a rebate of interest on sums not due at the time of paying over the proceeds of the sale to the creditor. This is done from necessity, and as an unavoidable consequence of the peculiar nature of the case." See also *Knapp* v. *Burnham*, 11 Paige, 332.

In *Mussina* v. *Bartlett*, 8 Porter, 284, the court remarked : " It frequently so happens that the property mortgaged consists of one entire parcel, which could not be divided, or would be greatly lessened in value by division. Suppose, in such a case, a decree should be had for a sale before the entire sum intended to be secured fell due, could the mortgagor insist upon being paid the excess produced by the sale ? We apprehend not. If he could, the right to coerce a sale upon the first default, instead of being beneficial, would often be injurious to the mortgagee, if he were to avail himself of it ; for, having paid over the excess, the premises being sold, his security would be gone, and he thrown upon the personal responsibility of the mortgagor." See *Baker* v. *Lehman*, 1 Wright, Ohio Rep. 524.

In *Kimmell* v. *Willard's administrator*, 1 Douglass, Mich. Rep. 223, the court remarked : " We think that the mortgagee might have bidden for the premises when exposed to sale, the whole amount unpaid on the mortgage, whether

for interest or principal; and any attempt on the part of the mortgagor to enforce in a court of law the payment of the difference between the amount actually due, and the amount of the bid, would have been averted by the interposition of a court of equity, which would, under the circumstances, regard the equitabls rights of the mortgagee as countervailing the strict legal rights of the mortgagor. In other words, equity would regard the money realized from the sale as the primary fund for the payment of the instalments not due, inasmuch as the effect of the sale would be to disincumber the estate of the mortgage, which stood before as a pledge for the payment of the debt. Upon this point we have no doubt. Again, it would have violated no principle of law to have exposed the premises for sale, charged expressly with the payment of the future instalments. In such case, the sale would have discharged the estate of the mortgage; but still a court of equity would lend its aid to the mortgagee, and regard the estate in the hands of a purchaser as charged with the debt. This aid would be granted, not because of any claim arising out of or by virtue of the mortgage, but in consequence of its having operated so as to discharge the mortgagor from all personal liability; and for the more obvious reason that an agreement would be implied as between the mortgagee and the purchaser, to consider the balance due the former, as a lien in equity upon the premises."

In the case of *Cox* v. *Wheeler*, 7 Paige's Chan. Rep. 248, it was held by the Chancellor, that when a mortgage is payable by instalments, the mortgagee has a right to sell the premises discharged of the lien of future instalments, and retain the whole amount of his mortgage and costs out of the proceeds of the sale. And if he chose to sell subject to the incumbrance of the instalment, which was not then due, in legal intendment, the premises would bring so much less on the sale, and the purchaser would take the premises subject in equity to the payment of the incumbrance thereon. In such a case, the mortgaged premises become in equity the primary fund for

the payment of the amount of the incumbrance. And if the mortgagee becomes himself the purchaser, the incumbrance becomes merged in his legal estate in the equity of redemption, and the debt is in equity extinguished.

In *Aldrich* v. *Reynolds*, 1 Barb. Chan Rep. 613, it was held, that the value of the growing crops taken off by the mortgagor, during the time for which the sale of the premises was suspended by an injunction, formed a part of the damages sustained by reason of an injunction staying the complainant from selling the premises under his decree; that the counsel fees, which he was obliged to pay to obtain a dissolution of the injunction, likewise should be included in assessing the damages; the costs of reference to a master to ascertain the amount of damages should likewise be included, and the interest upon the whole sum, the collection of which had been suspended by the injunction.

From the view we take of the subject, there is no analogy between this case and those reported in 11 and 14 Johns., above cited. There, in order to enable the plaintiff to maintain his action against a third party, he must show his injury, and show the intent of the third party in inflicting it. So in the case in 17 Wend.

In this case, in the opinion of this court, the damages were properly assessed, and there is no error in the act of the court below in assuming to give, or in giving the instruction. Its judgment is therefore affirmed, with the concurrence of the other judges.