T. A. MEYSENBURG, TRUSTEE FOR BERNARD N. STERNBERG, Appellant, v. C. W. SCHLIEPER, CHARLES BORG AND ROBERT BARTH, Respondents.

1. *Injunction — Delay in sale of personal property — Depreciation — Measure of damages — Construction of statute.* — When delay in the sale of personal property is caused by an injunction, and the depreciation in the salable value of the property is an incident of the delay, the loss, within the meaning of the statute (Wagn. Stat. 1080, § 11), is held to be "occasioned" by the injunction. And the depreciation is the measure of damages.

2. *Mortgages and deeds of trust — Injunction to stay — Sale under deed of trust — Action of damage under — Measure of damages* — By the terms of a deed of trust on personal property, upon the non-payment of the first note at maturity, all the others became at once due, and the property might be sold to satisfy them. The first note when due was unpaid, and the property was advertised for sale, but the sale was prevented by injunction. Subsequently, before the second note became due, the first note was paid, the injunction was dissolved, and the property, on maturity of the second note, was sold to satisfy the remaining indebtedness. But meanwhile, pending the injunction, the property had greatly fallen in value, and failed to satisfy various encumbrances which had been put upon the property. In an action of damages against the plaintiffs in the injunction, by the holder of a subsequent unsatisfied deed of trust, it was contended by defendants (plaintiffs in the injunction) that an actual sale was a necessary condition to the maturity of the notes not due on their face; and that hence,

no sale occurring, they were not responsible for a depreciation in the value of the property up to the time when the second note purported to be due; but *held* by the court, that defendants having, by their unwarrantable interference, prevented the sale, could not avail themselves of the non-performance which they had occasioned.

## *Appeal from St. Louis Circuit Court.*

· The Borg deed of trust was given May 28, 1867, to secure four notes for $1,750 each, of that date, and payable in one, two, three and four years respectively. Previous to this deed another had been given, November 14, 1866, to one Barth, to secure the payment of certain other notes. On the 19th of October, 1867, Windeck, being owner of half of said property, subject to the foregoing deed of trust, conveyed his interest to plaintiff Meysenburg, to secure a note of $1,200 in favor of Sternberg, due sixty days from date.

On the 10th day of April, 1868, the real estate was sold under the first or Barth deed of trust for some $9,400, which amount paid the first debt, and left a surplus of $3,719.85.

Two thousand three hundred and ten dollars of principal and interest falling due on the Borg notes, the property was advertised under that deed for sale on the 26th of June of the same year, but the sale was prevented by the plaintiffs' injunction.·

On the 3d day of December of that year, the surplus of $3,719.85 was paid over to defendant Schlieper, the beneficiary in the second or Borg deed of trust. At that time only the first Borg note for $1,750 was due, and the payment far more than satisfied that note, principal and interest, and went toward the satisfaction of the one due May 28, 1869. The property was afterward sold under the Borg deed of trust, in July, 1869.

For the facts in this case see also the opinion of the court, and the same case as reported in 46 Mo. 209.

*Geo. P. Strong*, for appellant.

I. The payment of the $3,719, December 3, 1868, discharged all of the debt that was due, and destroyed or took away all the right of Schlieper's trustee to sell. It therefore took away whatever right he ever had to be compensated for any depreciation of the property; it suspended his right of sale until May

28, 1869, and before that time both injunctions had been dissolved. (Salmon v. Claggett, 3 Bland, 179; Kennedy's Adm'r v. Hammond, 16 Mo. 357; Reddlesbarger v. McDaniel, 38 Mo. 142.) The depreciation of paper currency forms no part of the damages. (Bircher v. Parker, 40 Mo. 121; Roach v. Burnes, 33 Mo. 323.)

II. The only remedy remaining, if any did remain, was by an action on the injunction bond. The first case was out of court, and in the second there was a final judgment against the sureties for the costs which constitute damages secured by the bond. No second judgment could be rendered against them.

III. The engine, machinery, etc., were fixtures and passed to the grantee of Barth, trustee. The testimony shows that all this machinery was attached to the soil and freehold in such a way as to make it a permanent attachment to the soil, and therefore, as between grantor and grantee, mortgagor and mortgagee, a fixture, passing with the realty under the sale by Barth, trustee. It was error to take their condition or relative value into the account at all in estimating damages. Schlieper had no interest in them. (Rogers v. Crow, 40 Mo. 93; Pillow v. Love, 5 Hayw. 109; Phillipson v. Mullanphy, 1 Mo. 620; Beckwith v. Boyce, 9 Mo. 560; Cohen v. Kyler, 27 Mo. 122; Goddard v. Chase, 7 Mass. 432; Union Bank v. Emerson, 15 Mass. 159; McDaniel v. Moody, 3 Stew. 314; Dispatch Line v. Bellamy M. Co., 12 N. H. 205, 232–3; 4 Metc. 306; 7 Watts, 106; 19 Pick. 314.)

There is no testimony of any depreciation between the date of the granting and the dissolution of the first injunction. There is a total want of any proof that the depreciation was the consequence or direct effect of the injunction.

*Kehr*, for respondents.

I. The injunctions having been dissolved, Schlieper is entitled under the bond to recover all damages occasioned by such injunctions. Upon the dissolution of an injunction restraining the sale under a deed of trust, the court, in assessing the damages, should ascertain the probable amount that would have been realized, the

destruction or deterioration of the property, the depreciation of its market value, expenses of litigation, and all other matters of loss or injury sustained by the creditors in consequence of the injunction. (Kennedy's Adm'r v. Hammond, 16 Mo. 341; City of St. Louis v. Alexander, 23 Mo. 522; Reddlesbarger v. McDaniel, 38 Mo. 141–2.)

II. (a) In both his petitions herein, appellant Sternberg has treated the articles as personal property; he has enjoined their sale as such, and cannot now gainsay what by the record he has alleged. (b) The articles are not fixtures, as between vendor and vendee. Machinery does not pass with the freehold. (Lacy v. Gibony, 36 Mo. 320; Collins et al. v. Mott, 45 Mo. 101; Hunt v. Mullanphy, 1 Mo. 508.)

III. On the non-payment of the first note all the others became due; and it is a fallacy to speak of the maturity of the first or second note, for if the right of sale existed, then *ipso facto* the entire debt and interest became due and payable. Whoever prevents the performance of a condition cannot take advantage of its non-performance. (Major v. Hickman, 2 Bibb, 217; Carroll v. Collins, *id.* 431; Clendenin v. Paulsel, 3 Mo. 230.) The appellant cannot say that the debt did not mature because we did not sell; for nothing but his wrongful act in suing out the injunction prevented us from selling. He cannot take advantage of his own wrong; and hence the test is, had we the right to sell? But the right to sell on the respective days for which the property was advertised was adjudicated in our favor in the original cases, and is therefore no longer an open question.

IV. The appellant assumes that the $3,719.85 real estate surplus, which of right belonged to Schlieper as second encumbrancer, and which the court, on the 3d of December, 1868, ordered to be turned over to him, extinguished Schlieper's first and second note. This is not so.

(a) The whole debt (and not only the first and second notes) was then due by virtue of the right to sell on the 1st of December, 1868.

(b) By the terms of the deed of trust the trustee was authorized to sell the property conveyed, or any part thereof. The

$3,719.85, being the proceeds of the real estate mortgaged, represents but a part of Schlieper's security; the personalty represents the other part.

CURRIER, Judge, delivered the opinion of the court.

Windeck &. Luebering conveyed the real and personal property described in the petition to the defendant Borg, in trust to secure the payment of certain notes. The said estate was at the time subject to a prior deed of trust in favor of a third party. Subsequently Windeck conveyed his remaining interest in the property, in trust to secure a debt due plaintiff Sternberg.

The personal property included in the second or Borg deed of trust was advertised for sale under that deed, the sale to occur June 26, 1868, one of the notes secured by it having matured, and default having been made in the payment of it. The plain-tiffs stopped the sale by injunction, and the injunction was not removed until November 6, 1868. After the injunction was dissolved Borg again advertised, but the sale was again interrupted by a second injunction, which was also sued out by the plaintiffs. This second injunction was laid December 1, 1868, and dissolved May 15, 1869, the first suit in the meanwhile having been dismissed.

Subsequently to the dissolution of these injunctions, the court assessed the defendants damages as follows: Under the first at $2,450; and under the second, $773.63. The plaintiffs complain of these assessments as having been made under erroneous principles, and seek a reversal on that ground. The two cases were tried together in the court below, and have been so argued and submitted here.

The Circuit Court assessed the damages upon the principle that the plaintiffs were liable for the depreciation in the salable value of the property during the period the sale was suspended by the injunctions as well as for the costs and expenses incurred in defending against the injunction suits. The court also seems to have taken into consideration, in assessing the damages, the depreciation upon certain articles of property which the plaintiffs insist had been attached to the realty as fixtures, and had thus

ceased, as the plaintiffs claim, to be personal estate. It is the action of the court in making these assessments that the plaintiffs object to and complain of as erroneous.

Prior to either of these injunctions Windeck & Luebering had become insolvent, so that the only reliance for the payment of the notes secured by the Borg deed of trust was the security furnished by that deed. One of the notes thus secured, and a year's interest on the remaining notes, became due the last of May, 1868; and the property in question, as we have seen, was advertised for sale under the Borg deed of trust on the 26th of June of that year. Had the sale been made as advertised, it satisfactorily appears that the whole debt secured by that deed would have been paid from the proceeds of the sale, and from the surplus arising from the sale of the real estate under the first deed of trust; the Borg deed of trust being the second encumbrance upon the realty, and the first upon the personalty.

The personal property, on the 26th of June, 1868, as the evidence shows, was well worth, and would have sold on that day, for at least $4,000. The sale, however, was delayed by the injunctions so that it did not occur until July, 1869, when the property was duly advertised and sold for $1,550, the plaintiff (Sternberg) becoming the purchaser. This result indicates depreciation in the salable value of the property of $2,500. On whom should this loss fall? Was it, in the language of the statute (Gen. Stat. 1865, p. 667, § 11), "occasioned" by the injunctions? If it was, the plaintiffs should pay it, and the judgment of the Circuit Court so awarding should be affirmed; otherwise the judgment should be reversed.

In opposition to this view, the plaintiffs' counsel insist that the depreciation ought not to be taken into consideration, since, as he claims, the injunctions were not the direct cause of the depreciation. However that may be, the injunctions indisputably delayed the sale for nearly a year, and the $2,500 loss was an incident of that delay. The injunctions, therefore, were the "occasion" of the supposed loss. In cases such as this the damages are to be measured by the extent of the "injury the creditor has sustained from the improper act of the party in

stepping in between the creditor and his debtor," and thus post-poning the enforcement of the creditor's rights. (City of St. Louis v. Alexander, 23 Mo. 522.) If property is deteriorated or destroyed during the suspension caused by an unwarranted injunction, the loss thence resulting is to be considered in assess-ing damages. (Kennedy's Adm'r v. Hammond, 16 Mo. 341; Middlesburger v. McDaniels, 38 Mo. 142.) The depreciation in the salable value of property occurring under the same circum-stances falls within the same principle.

It has already appeared that the first injunction was dissolved November 6, 1868, and the second May 15, 1869. On the 3d of December, 1868, the defendant Schlieper, the creditor under the Borg deed of trust, was paid $3,719.85, that being the sur-plus arising from the sale of the real estate under the first deed of trust. Schlieper's was the second encumbrance, and so entitled to that surplus. The $3,719.85 exceeded the amount then due upon Schlieper's notes, as shown by the notes, apart from the deed of trust. On that fact the plaintiffs found the theory that all right to sell under the deed of trust was suspended as from the beginning, and irrespective of the injunction, till the maturity of the note next falling due, to-wit: May 28, 1869. The injunctions were removed prior to that date, and it is accordingly argued that the injury resulting from the depreciation of the property is not traceable to any delay caused by the injunctions.

This view of the matter involves an examination of the pro-visions of the deed of trust bearing upon the construction of the notes, as respects the date of their maturity. The deed provided that " in case the property should be sold on account of the non-payment of any one of said notes, or the interest on any one of them, then all the notes should be considered due and payable " from the date of sale. The deed further authorized a sale of the property, or any part of it, if the notes or any one of them, or any part of the interest, should become due and remain unpaid.

Twenty-three hundred and ten dollars of principal and interest became due in May, 1868, and the property was accordingly duly advertised for sale on the 26th of the following June, in accord-ance with the terms of the deed. The sale, however, as we have

seen, was prevented by the wrongful interference of the plaintiffs. At that time Borg had an undoubted right to sell the property, and the whole of it, and apply the proceeds to the payment of the notes, whether due upon their face or not. For the purpose of foreclosing the deed of trust, the notes, as the deed provided, were to be considered and treated as falling due upon the occurrence of the first default. By the terms of the deed it was the right of Borg to sell the property and pay the notes as far as the proceeds would go, although only one of them might, according to their terms, be actually overdue. He sought to avail himself of this right, but was defeated by the wrongful acts of the plaintiffs. They wrongfully interposed and stopped the sale, and now urge the non-occurrence of the sale as a reason why they should not be held to liability. Is it warrantable for them thus to take advantage of their own wrong? I think not. They wrongfully stopped the sale, and the consequences of that wrongful act they must meet and bear. If the notes did not all become due and payable on the 26th of June, 1868, it was because of their unjustifiable interference. Their interference was not only the occasion but the primary cause of the loss and damage for which the defendants now seek compensation.

The sales did not in fact occur as originally advertised; therefore, say the plaintiffs, only one note and the interest was due and payable, and so much was actually paid (the plaintiffs insist) from the proceeds of the sale of the real estate under the first deed of trust, prior to the maturity of the note next falling due. But the sale did not occur as advertised because the plaintiffs enjoined it. The non-occurrence of the sale was one of the consequences of the injunction. The defendants were injuriously affected thereby, and the plaintiffs must make good the loss. If an actual sale was, as the plaintiffs claim, a necessary condition to the maturity of the notes not due upon their face, the plaintiffs prevented the performance of that condition, and are therefore not in a position to urge its non-performance as a reason why they should not be held liable. It is laid down as a "general principle that he who prevents a thing from being done shall not avail himself of the non-performance which

28—VOL. XLVIII.

he occasioned." (Majors v. Hickman, 2 Bibb, 219; *id.* 431; Clendenin v. Paulsel, 3 Mo. 230.)

In my judgment these just principles should be applied to the causes under consideration. The previous litigation (see 46 Mo. 209) has established the proposition that the plaintiffs had no right to interfere, and the evidence shows that their interference resulted in the damages assessed against them. The principles involved apply to both injunctions, the second as well as the first. On the 1st of December, 1868, nothing had been paid, and the defendants might then have sold but for the injunction which the plaintiffs wrongfully interposed on that occasion.

To sum up on this point: The property was advertised for sale June 26, 1868, and would have been sold on that day but for the first injunction. Upon the dissolution of that injunction the property was again advertised for sale December 1, 1868, and would have been sold on that day but for the second injunction. These injunctions were wrongful, and suspended the sale for a year, during which period the property greatly depreciated in its salable value, to the manifest injury of the defendants. The injunctions caused the delay, and the delay resulted in loss. The injunctions, therefore, if not the direct cause of the loss, were at least the " occasion" of it, and it is but simple justice that the plaintiffs should respond in damages.

But it is urged by the plaintiffs that the depreciation was assessed in part upon an engine, etc., which, as they claim, had been attached to the realty as permanent fixtures. Assuming this to be true, the plaintiffs then insist that the title to the engine, etc., was transferred by the sale of the real estate under the first deed of trust, and thus wholly withdrawn from sale under the Borg deed of trust.

The theory is well; but the plaintiffs, in order to maintain it, are obliged to assume a state of facts in direct conflict with the averments of their petition. It is averred in the petition that the engine, as also the other articles now claimed to have been fixtures, were "personal property." If personal property, they constitute no part of the real estate, either as fixtures or otherwise. The claim that the engine, etc., were fixtures is an after-

thought, and one that cannot be harmonized with the allegations of the petition.

Again, the court below declared the law in relation to fixtures precisely as the plaintiffs requested, but the facts were found against them, and I see no occasion for interfering with the result. The property was treated on all hands and by all parties, as far as appears, as personal property.

The other judges concurring, the judgment will be affirmed.