[No. 1646.   Decided February 7, 1895.]

# W. R. WHITE, *Respondent*, v. GEORGE S. BROOKE *et al.*, *Appellants*.

DAMAGES — LOSS RESULTING FROM ENJOINING MORTGAGE FORECLOS-
URE — ACTION ON INJUNCTION BOND — COLLATERAL ATTACK.

Where a prior mortgagee has been enjoined from foreclosing his chattel mortgage on certain goods and making sale thereof to satisfy his claim, and pending the injunction the goods have been sold under a foreclosure of a junior mortgage, the prior mortgagee may, upon a dissolution of the injunction, recover as damages upon the injunction bond the full amount of his claim, if the value of the goods was equal to the amount thereof.

The fact that the obligee in an injunction bond may have a remedy by an action for conversion for the disposal of goods upon which he has a mortgage lien, will not affect his recovery of damages when he pursues his remedy by an action upon the injunction bond.

In an action upon an injunction bond for damages, the defendants cannot go behind the decree dissolving the injunction and assail the validity of the agreement upon which the decree was founded.

*Appeal from Superior Court, Lincoln County.*

*Jones, Belt & Quinn,* for appellants.

*Merritt & Salisbury,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This is an action brought by the respondent upon an injunction bond executed by the appellants for alleged damages growing out of the injunction issued against the respondent and in favor of the North Star Boot & Shoe Company, a corporation. The respondent in this action had a mortgage for $1,102.85 upon the personal property of one A. F. Rosbách. The said Rosbach had also executed a chattel mortgage to the North Star Boot & Shoe Company of the same property, which was executed subsequent to

the execution of the mortgage of respondent White. The complaint alleges these facts, together with the proper recording of the respondent's mortgage; that the same was due, and that after the maturing of the notes which the mortgage was given to secure, White gave notice of foreclosure as provided by statute, and placed the mortgage in the hands of the sheriff of the proper county to post and serve; that said notices were signed, served and posted as required by the statute in such cases made and provided, and that by the terms thereof sale thereunder was set for the 2d day of October, 1893; that on said day the North Star Boot & Shoe Company filed its complaint in the superior court of Lincoln county, making the respondent a defendant, alleging the chattel mortgage on said stock of goods, dated June 9, 1893 (the mortgage of respondent having been executed on the 18th day of April, 1893); that the same was due and was then being foreclosed, and that the mortgage of plaintiff White was fraudulent and void, and made to hinder, delay and defraud the creditors of said A. F. Rosbach; that at the time of the execution of the said notes and mortgages, the said Rosbach was not indebted to said White in any sum whatever, and that said mortgage was not attempted to be foreclosed until after the said corporation had taken possession under its alleged mortgage; and praying for a temporary restraining order, restraining White, his agents and attorneys, from further proceeding with the said foreclosure, and from offering said stock of goods, or any part thereof, for sale; that the sheriff be likewise enjoined from making such sale, or from taking any further steps therein, until the final hearing of the cause commenced; that on said final hearing said mortgage of White's might be adjudged null and void; alleging in substance that the restraining order was

granted as asked for by the North Star Boot & Shoe Company, temporarily enjoining and restraining the plaintiffs from taking any further steps in their foreclosure proceedings until the final hearing of the cause; the said restraining order to take effect and be in force from and after the filing of a bond in the sum of $2,000, for the payment of said White and Donahue, the sheriff, with two or more sureties approved by the clerk of the court; alleging the filing of a bond and the approval of the same, with the appellants here as sureties, and the issuing of the injunction after the filing of the bond, and that, in obedience to said order of injunction, they ceased from all further steps in such foreclosure proceeding. The complaint alleges that the stock of goods upon which their mortgage was a lien was, on the 2d day of October, 1893, of the value of a sum more than sufficient to pay the indebtedness of the said Rosbach to the said White, and that if the said sale had not been enjoined the same would have sold for a sufficient amount to pay said indebtedness; that after the service of the restraining order as aforesaid, and before the dissolution thereof, the goods were sold under the second mortgage in favor of the North Star Boot & Shoe Company, and were taken out of the county of Lincoln, and to some place unknown to said White, and that he was and has been ever since said time unable to find said property, or any part thereof, and was, therefore, unable to make or collect any part of the said indebtedness; that the said stock of goods so sold was and is all of the property owned by the said Rosbach, and was the only property out of which said notes could be collected, and that the said Rosbach is now and has ever since said time of said sale been insolvent. That at said sale, on the 3d day of October, the North Star Boot & Shoe Company became the pur-

chaser, and paid to the sheriff of said county the cost of said sale, and did not pay to said sheriff any part of the sum bid at said sale, but made its receipt to the sheriff therefor without any money having actually passed. That thereafter, on the 28th day of November, 1893, a trial of said cause was had, and on said day a judgment was rendered thereon in favor of White, the then defendant, and against the then plaintiff, dismissing said action and dissolving said injunction, and for costs and disbursements; which judgment has ever since remained in full force and effect, unsatisfied and unappealed from. Alleges the amount of the debt lost by reason of the premises; that respondent had a lien on said stock of goods under said mortgage, and that prior to the commencement of this action plaintiff had demanded from the defendants the amount of his damages, and that defendants refused to pay the same, or any sum whatever; that they still refuse, and that the sum is still due, owing and unpaid; demanding judgment for $1,102.85, with interest, and $100 attorney's fee. A demurrer was interposed to this complaint, which was overruled.

The answer admitted the execution of the bond, but alleged that the condition upon which the bondsmen agreed to become liable had not been broken, in this, to wit: That the court had never fully decided that such plaintiff was not entitled to the injunction for which said bond was given. As to all the other allegations, matters and things contained in the complaint, defendants, answering, said they had not sufficient knowledge or information to form a belief, and therefore denied them. They affirmatively set up the mortgage of the North Star Boot & Shoe Company; alleged the fact that they were proceeding to foreclose their mortgage, and had advertised the sale of the goods on the 3d day of

October, when the plaintiff, pretending to hold a mortgage upon the same property, undertook the foreclosure, under the provisions of the statute, while the said property was in the hands of the sheriff, as the agent of the North Star Boot & Shoe Company; that the respondent herein, White, has not now, and never has had, any legal or valid claim against the goods or property of said A. F. Rosbach; that the mortgage was a pretense, and given for the purpose of covering up and keeping from the reach of creditors the property described in the mortgage.

The answer and complaint are both long, but we think we have substantially stated the allegations therein. A trial was had and a general and special verdict found. Motion for a new trial was overruled, and judgment entered. To all of which appellants excepted, and bring the case here on appeal.

It seems to us the principal question for discussion is, did the court err in overruling the general demurrer to the amended complaint, or were the damages incurred by the plaintiff the direct or approximate result of the injunction obtained by the plaintiff in the injunction suit. There is some conflict of authority on this question, but we think the great weight of authority and the better reasoning support the contention of the respondent. The appellants quote § 1635 of vol. 2 of High on Injunctions, to the effect that sureties are liable for such damages only as result from the injunction itself, and not for damages caused by the unlawful act of the person obtaining the injunction during its pendency. While this is true as a general proposition, we think the damages here did result directly from the injunction itself. Certain it is that the effect was direct enough to take from the possession, control and reach of the respondent the property upon which he had a

lien, and which, if the statements of the complaint are true, would have been sufficient to have paid his claim, and which, according to the allegation of the complaint, would have been sold on the 2d day of October, and the claim would have been satisfied.

While it is true that sureties on injunction bonds, or, for that matter, on any other bonds, will not be held beyond the strict terms of their contract, it seems to us that under the strict terms of their contract they are liable for the damages which arose in this case. The promising part of the bond is as follows:

"Now, therefore, we, the undersigned, residents of the county of Lincoln, state of Washington, in consideration of the premises and the issuance of said injunction, do promise to the effect that in case said injunction shall be issued said plaintiff will pay to the said parties enjoined such damages, not exceeding the sum of $2,000, as such parties may sustain by reason of said injunction, if the court finally decides that the said plaintiff was not entitled thereto."

So that there is no question of rigid or liberal rule, so far as the rights of the bondsmen are concerned, but it is a pure question of fact as to whether the damages were sustained by the respondent by reason of the injunction.

It seems to us that if we should hold that the damages in this case were too remote, or that the defendant in the injunction proceeding should be relegated to the sheriff on his official bond for redress, injunction bonds would be found entirely inadequate and altogether unnecessary; for certainly, by reason of the respondent being forbidden to pursue the remedy which he plainly had under the law, to foreclose his mortgage and sell the property to satisfy his debt, his lien was destroyed and the property was taken from the jurisdiction, and was lost to him. And it seems in reason it would make

no difference how the loss occurred if this loss could
be traced directly to the issuance of the injunction;
and under the allegations of the complaint the dam-
ages would be the amount of the debt, the collection of
which was prevented by the injunction.

Respondent cites in support of his contention *Dough-
erty v. Dore*, 63 Cal. 170, and we think this case is
squarely in point.    There the plaintiff was a street con-
tractor who had a contract for doing the work which
he was temporarily enjoined by the injunction from
prosecuting.    The testmony showed that by reason of
said injunction and service thereof and delay caused
thereby, a large amount of material placed in a certain
part of the street by plaintiff was left without protec-
tion, and was washed away by the action of the water,
and that the plaintiff had to, and did, replace it at a
heavy cost.    It was urged in that case that the injunc-
tion was not the cause, either approximate or remote,
of the damage; but it was held by the court below that
it was sufficiently approximate, and such decision
was affirmed by the supreme court.    "The injunc-
tion," says the court, "did not wash away the work
or any part of it, but it prevented the plaintiff from
taking measures to protect it against the the action of
the water."    The court in that case quotes *Meysenburg
v. Schlieper*, 48 Mo. 426, where it was held that one
who was enjoined from selling his property until after
it was greatly depreciated in value could recover the
amount of such depreciation against the party who
wrongfully sued out the injunction;  and *Riddlesbarger
v. McDaniel*, 38 Mo. 138, where it was held that if the
party had been injured in consequence of the injunc-
tion, he was entitled to whatever damages he had
sustained; that destruction of the premises or their de-
terioration, and all matters whereby the party had

suffered loss or injury, might be taken into account in assessing damages.

It is no doubt true that the liability upon an injunction bond is limited to such damages as arise from the suspension or invasion of vested legal rights by the injunction; but it seems to us that in this case there was both an invasion and a suspension of the vested legal rights of the mortgagee to foreclose his mortgage and sell the property mortgaged to satisfy his claim. The rule is thus stated by Sutherland on Damages, vol. 2, p. 1118:.

"If an owner is thus deprived of his personal property, he is *prima facie* entitled to recover its value; and this measure of redress has been allowed where the party obtaining the writ, during its pendency, took possession of the property, destroyed its identity and converted it to his own use;" citing *Barton v. Fisk*, 30 N. Y. 166.

In that case the plaintiff, claiming to be the owner of certain timber lying on the defendant's land, sued the latter, who also claimed to own the property, to establish his title. He procured a preliminary injunction forbidding the defendants to assert their alleged ownership by suit in court, or in any other way, pending the principal suit. He failed in that suit, the court determining that the property belonged to the defendants, and not to the plaintiff. In the meantime the plaintiff carried off the timber, destroyed its identity, and disposed of and converted the proceeds to his own use; and the court held that the measure of damages which the defendants in the suit were entitled to recover in an action upon the injunction bond was *prima facie* the value of the property in question. Judge DENIO, in rendering the opinion in this case, says:

"This seems to me a very plain case. . . . The plaintiff's argument is, that the loss was not occasioned

by the injunction, but by the tortious act of the plaintiff
and his assistant, unconnected with that process. This
is too narrow a view of the question. If it had been
carried off and converted by a stranger while the owners
were prohibited from doing anything to protect it, the
persons who restrained them ought to make recompense
for the loss. *A fortiori* he should make compensation
when he himself carried it off and converted it during
the restraint which he had procured to be imposed.
The efficient cause of the loss was the inability of the
defendants, caused by the injunction, to take care of
and preserve that which was their own."

And so the efficient cause of the loss of the goods in
this case was the inability of the mortgagee to pursue
his legal right to sell these goods by reason of this in-
junction, which was based upon the bond sued on here.
The opinion above was concurred in by all the judges,
and a strong concurring opinion, too long for repeti-
tion here, was also rendered by Judge HOGEBOOM; and
in that case it was also held, under the contention that
the plaintiff and his agent would be liable to an action
for an unauthorized conversion of the property, that
the remedies were cumulative; that the bond was in-
tended to be a complete protection to the enjoined
party from all loss which could possibly ensue in con-
sequence thereof, so far as the same was occasioned by
the act of the party applying for the injunction, or his
agents.

We think it hardly worth while to multiply author-
ities on this proposition. It seems to us that if the
complaint be true, the damages alleged were so plainly
and approximately the result of the injunction that the
court properly overruled the demurrer.

It is argued in the brief of the appellants that the
court sustained a demurrer to the affirmative defense
in defendant's answer; but the record fails to show

that a demurrer was either interposed or overruled. We think, however, that the court would have been justified in sustaining a demurrer to the affirmative matter set up in the answer. This was not in any sense an action for conversion, and it made no difference, so far as the damages in this action were concerned, whether another action could be brought or not. Neither could the defendants, the bondsmen, or others in this action, be permitted to go behind the final decree in the injunction suit and assail the validity of the agreement upon which that decree was founded. See 2 High on Injunctions, § 1641.

We have examined the other errors alleged, in relation to the instructions and admission of testimony and the weight of testimony, and think there was no substantial error committed by the court.

The judgment will therefore be affirmed.

HOYT, C. J., and SCOTT, ANDERS and GORDON, JJ., concur.