■EreeMAN, J.,
delivered the opinion of the Court.
This is a bill filed to enjoin a judgment in an action of ejectment in favor of defendant, Canady, against complainant and a number of other defendants, rendered in *612 the Circuit Court of LeKalb county, at June Term 1865, of said Court.
"VYe need not state in this opinion the grounds set out in the bill as an excuse for not making the defense at law. The defendant in this case has precluded himself from making any objection to the jurisdiction of the Chancery Court, by failing to object at the proper time, either by way of demurrer or plea.
He has filed an answer, in which it is true he has inserted what he is pleased to call both a plea, and perhaps, a couple of demurrers; but they are such pleadings as no ooin't having any regard to the rules of law or the forms of proceeding in such case, could take any notice of. As an illustration, after commencing his answer, as is usual, by proposing to answer so much of complainant’s bill as he is advised it is material for him to answer, &c., he says, “and all such parts as are not specially responded to may be considered as specially demurred to.” It would be an exceedingly liberal court, to say the least of it, that could treat this as having the effect of a demurrer. We need not notice the other equally informal efforts at objection to the jurisdiction in this case. It is now well settled, both by our immediate predecessors in this Court, and by other decisions of this Court, made many years ago, that the filing of an answer is a waiver of objection to the jurisdiction of the Court of Chancery over the persons, as well as the subject matter of the bill, even though it might be a matter of legal cognizance, which if taken advantage of by plea or demurrer, would be a fatal objection. See Lowry v. Naff, 4 Cold., 372; Bennett v. *613 Wilkins, 5 Cold., 240; Kirkman v. Snodgrass, 3 Head, 372 The question, then, presented is, what relief if any can we give the complainant, under the facts stated in his bill and the proof in the case.
The bill is based, to a large extent, on the idea of obtaining a delivery of the grant which Canady, the defendant has in possesion, and a divestiture of title of said Canady to the land, as consequent upon said delivery. It claims that complainant had purchased the grant of Canady, and taken an assignment of the grant, on the back of the paper, to himself, and is thereby made “equitable owner of the grant.” The bill then asks that the suit at law (what suit does not very distinctly appear,) be enjoined, and that the title of Canady under his grant be divested and vested in complainant, in accordance with said assignment. It needs no argument or authority to see at once that this can not be done. The law of Tennessee has at all times, prescribed the mode of conveyance of land, by deed, and the policy of our registration laws requires them to be registered. The purchase and assignment of the grant could, at most, have only given a right to the paper itself; but on no principle could it have operated as a conveyance of the land, nor could it have created any equitable right to or charge upon the same.
Tlie next prayer of the bill is, that this Court assume jurisdiction of all the matters in dispute, and render such decree as the facts and good conscience may require, and for all other relief, &c.
"We can, under the prayer for general relief, look to *614 the case made out by the bill and proof, and give sucli relief as the law permits.
We can not see, from the title exhibited, that complainant has a perfect legal title to the land in controversy. On the contrary, we can see, from the paper title he presents, that on the face of it he has not the legal title in himself to a part of the land, nor has he conveyed it to his vendees. We need not point out the defects in that title in this opinion. He, however, insists that he can make out a title under the statute of limitations, and there is proof in the record tending to support this view of the case, and he may be able to sustain this plea on another trial fairly had.
We can see, however, clearly, that the defendant, Can-ady, has not a title on which he could recover in a court of law, in ejectment, and that he was not entitled to a recovery in the ejectment suit in which he obtained the judgment in 1865, against complainant, and his tenants, perhaps, or vendees holding under title bonds.
The land was granted to one Thompson Newby, as assignee of Theodoric Burton, on the 2nd day of October, 1841, and the grant was based on a special entry, made by said Burton, 30th April, 1830. Canady claims title under an entry made on 27th of September, 1837, and a grant issued to him 6th of August, 1840. It is seen from this statement, that the Newby grant is the younger grant, but is based on the older entry; so that, by a long train of decisions in this State, Newby’s title is the better one, and Canady could not recover the land under his grant, if the defendant in ejectment shou *615 interpose tbe Newby grant and entry as a defense, unless he should show that he had obtained a title under said grant. This he does not pretend to, have done, but distinctly claims his title to be under his grant. We can, therefore, see clearly that the verdict and judgment in ejectment are unjust and contrary to law. This being so, the complainant, having been the real or material party to said -suit at law, is entitled to have it set aside, if he brings himself fairly within the rules laid down for granting such relief.
The record of the judgment in the Circuit Court shows that, while the case was regularly reached on the docket, yet it was tried ex parte; that neither the defendants nor their attorneys in that case were present, nor did any one appear for them. The caption of the record, which is a very imperfect one, from the Circuit Court of De-Kalb, after reciting the date of the term of the Court to be June, 1865, adds: “Court being duly organized, the following proceedings were had.” We know judicially, as a part of the history of the country, that the entire legal machinery of the State had for several years been disorganized, and the courts had not been held. We also know that in the Spring and Summer of 1865 they were reorganized, and the machinery of the State Government again put in operation. We are bound, therefore, in the light of these facts, to construe this entry to mean that this Court was but for the first time organized after the war, at the term at which the trial was had.
The proof shows that complainant was at the time an old and infirm man, living in another county; that the country -was in an unsettled state, confidence not yet re *616 stored, nor social order established on the basis of civil law, but that the military were stationed in the town of Smithville, for the’ purpose, as we may fairly assume, of keeping order, or aiding or protecting the court then being held. Taking all these things into consideration, we think an undue and uneonscientious advantage has been obtained over the complainant, by which a recovery has been had in the ejectment case, which it would be inequitable and unjust to enforce.
The complainant in the ejectment suit evidently took advantage of the peculiar state of the country, the absence of defendant and his counsel, to have a trial, where all the chances were in his favor, and where the defendants were not even heard to contest his claim. If he has, as claimed in liis answer, the superior title, he can easily maintain his right on another trial in the Circuit Court. If he has not the title, then he ought not to hold 1,300 acres of land, under a judgment thus unfairly and un-conscientiously obtained.
We, therefore, reverse the decree of the Chancellor dismissing complainant’s bill, and direct a decree here, setting aside the judgment at June Term, 1865, of De-Kalb Circuit Court, and ordering a new trial of said cause in said Court.
Each party will pay half the costs of this bill, both in the Court below and in this Court.