## KIRKEYS & SON *v.* CRANDALL.

### (*Knoxville.*     September 26, 1891.)

1. CHANCERY COURT. *Jurisdiction under Acts 1877, Ch. 97.*

   Chancery Court has jurisdiction, under Acts 1877, Ch. 97, of suit brought by principal to recover of his agent loss or damages resulting from the latter's neglect of duty, viz.: The agent's negligent failure to procure valid acceptance of draft by the drawee, whereby the principal suffered loss.

   Cases cited and approved: Glenn *v.* Moore, 11 Lea, 256; Williams *v.* Burg, 9 Lea, 456; State *v.* Keller, 11 Lea, 401.

   Cited without approval: Ramsey *v.* Temple, 3 Lea, 258.

2. PRINCIPAL AND AGENT. *Negligence of agent in procuring acceptance of draft.*

   An agent to procure acceptance of draft upon a corporation is liable to his principal for the amount of the draft, if it is lost in consequence of the agent's taking acceptance thereof by the secretary and treasurer of the corporation alone, he knowing that that officer had no authority to give the acceptance.

   Cases cited and approved: Walker *v.* Walker, 5 Heis., 425; Railroad *v.* Greer, 87 Tenn., 698; 9 N. Y., 582.

---

FROM  WASHINGTON.

---

Appeal from Chancery Court of Washington County. JOHN P. SMITH, Ch.

ROBERT BURROW for Complainants.

HARR & FAW for Respondents.

CALDWELL, J.   This is a bill in chancery by a principal against his agent, to recover $1,043.52, alleged to have been lost to the principal by the wrongful and negligent act of the agent in taking an invalid acceptance of a draft for that amount, when especially intrusted with the duty of procuring the drawee to accept the draft.

There is an appeal from the decree of the Chancellor granting the relief sought.

The first question for consideration arises on the demurrer of the defendant, in which the jurisdiction of the Court is questioned on the ground that the action is for unliquidated damages.

The Act of 1877, Ch. 97, conferred upon the Chancery Court concurrent jurisdiction with the Circuit Court in all civil actions, except those involving unliquidated damages for injury to person, property, or character.   Code (M. & V.), § 5043.

Unless derived from that enactment, the Chancery Court has no jurisdiction to determine the question presented for adjudication by this bill.

Strictly speaking, "unliquidated damages" are such damages as have not been ascertained or fixed by contract.   In that sense the words of the statute were interpreted and applied in the case of *Ramsey* v. *Temple*, 3 Lea, 258, the decision being that the Chancery Court had no jurisdiction of a bill to recover damages of an attorney for wrongfully suspending an execution, and thereby causing his client to lose the amount of the judgment.

Though the cases were distinguished, this decision was characterized as having gone "to the utmost verge of legitimate judicial construction," in the case of *Glenn* v. *Moore*, 11 Lea, 256, where it was decided that a Clerk was liable on his official bond, and subject to suit in the Chancery Court, for having taken an insufficient *supersedeas* bond, in consequence of which the property levied upon was released and lost to the creditor.

In the·former of these cases the act complained of was held to be an *injury to property* involving unliquidated damages, while in the latter the act complained of was held *not to be an injury to property*, and not to involve unliquidated damages.

In *Williams* v. *Burg*, 9 Lea, 456, it was decided that the Chancery Court had jurisdiction, under the statute in question, of a bill to recover damages for a breach of a covenant of warranty of title to land. A similar ruling was made in the case of *State, for use, etc.*, v. *Keller*, 11 Lea, 401, where a bill was filed against a County Surveyor to recover damages for a failure to properly survey land.

Under the last three cases cited it is clear that the Chancery Court had jurisdiction of the present action, and that the demurrer was properly overruled. The wrong complained of was not an injury to the person, character, or *property* of complainants within the meaning of the Act of 1877.

The next question is on the merits. After his demurrer was overruled the defendant answered the

bill, denying his liability upon various grounds. The cause was afterward heard by the Chancellor on pleadings and proof, with the result already stated.

The complainants, Wm. Kirkeys & Son, were founders and machinists in Cincinnati, Ohio. They shipped a bill of pipes, meters, and other water-works fixtures and materials to the Johnson City Foundry and Machine Works, at Johnson City, Tennessee, on the order of C. K. McCallum, secretary and treasurer of that corporation. Afterward they drew a ninety days' draft in their own favor on the Johnson City Foundry and Machine Works for $1,043.52, the price of said bill of goods, and sent the same to the Johnson City Bank, at Johnson City, for presentment to the drawee and acceptance by it. The bank undertook the agency, procured the draft to be accepted by C. K. McCallum, secretary and treasurer of the drawee, and, with his acceptance indorsed upon the draft, returned it to complainants, who, believing the draft to have been accepted by one authorized to bind the drawee, gave the matter no further concern for the time being.

About one month later complainants learned, for the first time, from the president of the drawee corporation, that the acceptance by McCallum was wholly unauthorized, and that his act in that behalf, as well as in the purchase of the goods, was repudiated by the corporation.

The truth then turned out to be that McCallum

bought the goods for his own use, though in the name of the Johnson City Foundry and Machine Works, without its knowledge or authority; and that, in the meantime, he had put them into water-works owned by himself, and had executed a deed of trust on the same to secure a debt to said bank, thereby placing it beyond the power of complainants to reclaim their goods or collect their debt from McCallum, who was and is insolvent.

The defendant, J. E. Crandall, was the president and owner of the Johnson City Bank, and he acted for it and for himself in the matters herein mentioned, especially in procuring the acceptance of the draft in question. When he procured the acceptance and returned the draft to complainants he well knew that McCallum was not authorized to bind the Johnson City Foundry and Machine Works, having been previously informed by the president of that corporation, and knowing from its course of business, that McCallum, though its secretary and treasurer, had no authority to bind it by any contract or instrument, and that the only means of binding the corporation was through the concurring assent and official signatures of both its president and its secretary and treasurer.

Had the defendant obtained both signatures to the acceptance, or, being unable to do so, informed the complainants of the lack of authority on the part of McCallum to bind the corporation, they would have saved their debt; for in the one case they would have received a draft on a solvent

corporation, and in the other they would have recovered the property sold by legal proceedings against McCallum. Having failed to do either, and as a consequence of that failure and the taking of an insufficient acceptance, the defendant has brought a loss upon complainants that is irreparable, unless he be compelled to make it good himself.

Though there is sharp conflict in the testimony on some material points, the foregoing conclusions of fact are satisfactorily established by the record.

It is entirely manifest that the defendant became the special agent of the complainants; that in the doing of the particular thing intrusted to him he was grossly negligent; and that, as the immediate consequence of that negligence, they were compelled to sustain a loss of $1,043.52.

Under a familiar rule of law, the agent is responsible for the loss, and bound to make full indemnity.

Mr. Story says: "Whenever an agent violates his duties or obligations to his principal, whether it be by exceeding his authority or by positive misconduct, or by mere negligence or omission in the proper functions of his agency, or in any other manner, and any loss or damage thereby falls on his principal, he is responsible therefor, and must make full indemnity." Story on Agency, Sec. 217c. See to same effect Mechem on Agency, Secs. 474, 506.

This principle is very broad in the scope of its application. That it is so is illustrated by numerous cases, only three of which we cite.

In *Walker* v. *Walker*, 5 Heis., 425, the agent, in violation of instruction to remit money by express, remitted instead a check on parties of good standing and credit. Before the principal could have the check cashed the drawees became insolvent. The agent was required to make good the loss by payment of the amount called for by the check.

In *Railroad* v. *Greer*, 3 Pickle, 698, the conductor of a railway freight-train, against the orders of his employer, permitted a gentleman to take passage on his train. That gentleman was injured, and the employer made liable in damages through the immediate negligence of other employes. The conductor was held to be responsible to his employer for the damages to the passenger.

In *Walker* v. *The State Bank of New York*, 9 N. Y., 582, the point decided is stated in the head-note as follows: "Where the holder of a bill of exchange transmits it to his agent for presentment to the drawee, such agent has no right to receive any thing short of an explicit and unequivocal acceptance, without giving notice to the holder as in case of non-acceptance; and he will be liable for any loss the holder may sustain in consequence of his neglect to do so."

The last case, which is very similar to the one before us in its important features, is substantially incorporated in the text of Morse on Banks and Banking (3d Ed.), Sec. 252.

Let the decree be affirmed with costs.