SWIFT & CO. *v.* MEMPHIS COLD STORAGE WAREHOUSE CO.

(*Jackson.*  April Term, 1913.)

1. **EQUITY.**  Jurisdiction of court of chancery.  "All civil causes of action."

Under Shannon's Code, sec. 6109, extending the jurisdiction of the chancery court to all civil causes of action triable in the circuit court, except for injuries to person, property, or character involving unliquidated damages, the words "all civil causes of action" mean only those civil actions which could have originated in the circuit court; the purpose of the act being to give litigants the option of bringing suits either in the circuit or the chancery court.  (*Post, p.* 87.)

Acts cited and construed:  Acts 1877, ch. 97.

Case cited and approved:  Simmons v. Leonard, 89 Tenn., 623.

2. **EQUITY.**  Jurisdiction of court of chancery.

Shannon's Code, sec. 6109, giving the court of chancery jurisdiction of all civil causes of action heretofore triable in the circuit court, does not give the court of chancery exclusive, but merely concurrent, jurisdiction of such actions.  (*Post, p.* 87.)

Acts cited and construed:  Acts 1877, ch. 97.

Cases cited and approved:  Jackson v. Nimmo, 71 Tenn., 597; Ramsey v. Temple, 71 Tenn., 252; Williams v. Burg, 77 Tenn., 459; Hawkins v. Kercheval, 78 Tenn., 542; Frazier v. Browning, 79 Tenn., 254; Glenn v. Moore, 79 Tenn., 256; State v. Keller, 79 Tenn., 401; Kirkseys & Son v. Crandall, 90 Tenn., 532; Ducktown Sulphur & Iron Co. v. Fain, 109 Tenn., 65; McCreary v. First National Bank, 109 Tenn., 129; Trust Co. v. Hotel Co., 124 Tenn., 664.

3. **EQUITY.**  Jurisdiction of court of chancery.  "Liquidated damages."

Under Shannon's Code, sec. 6109, extending the jurisdiction of the court of chancery to all civil causes of action, except for

Swift & Co. v. Warehouse Co.

injuries to person, property, or character involving unliquidated damages, an action for damages for injuries to eggs caused by the negligence of the warehouseman in allowing them to absorb fruity flavors cannot be maintained in the court of chancery, for not only is the action based on an injury to property, but the damages are unliquidated; the contract of bailment not fixing the amount; and "liquidated damages" being the amount of damages which have been fixed by anticipatory agreement between the parties (citing 5 Words and Phrases, 4174.)   (*Post, p.* 93.)

Acts cited and construed:   Acts 1877, ch. 97; Acts 1851-52, ch. 365, sec. 9.

Code cited and construed:   Sec. 6131 (S.); sec. 4321 (T. & S. and 1858).

Cases cited and approved:   Ramsey v. Temple, 71 Tenn., 252; Kirkseys & Son v. Crandall, 90 Tenn., 532.

### ON PETITION TO REHEAR.

**4. EQUITY.   Statutory provisions.   Repeal by implication.**

Acts 1851-52, ch. 365, sec. 9, which was carried into Shannon's Code as section 6131, provides that the filing of an answer is a waiver of objection to the jurisdiction of the court of chancery and the cause will not be dismissed, but will be determined on its merits, although the court be of the opinion that the matters complained of are of legal cognizance.   Acts 1877, ch. 97, carried into Shannon's Code as section 6109, provides that the court of chancery shall have jurisdiction of all actions triable in the circuit court, except actions for injuries to person, property, or character involving unliquidated damages.   *Held*, that the act of 1851, in so far as it applied to the exceptions in the act of 1877, was repealed by implication, although it remained in force as to objections to jurisdiction over the person of the defendant or the local *status* of the litigation, and consequently the filing of an answer by the defendant is not a waiver of objections to jurisdiction, where the action is one falling within the exceptions of the statute.   (*Post, p.* 96.)

Acts cited and construed:   Acts 1851-52, ch. 365; Acts 1877, ch. 97.

Code cited and construed:   Sec. 6131 (S.); sec. 4321 (T. & S. and 1858).

Cases cited and approved:   Holcomb v. Canady, 49 Tenn., 612; Frazier v. Tubb, 49 Tenn., 666; Rankin v. Craft, 48 Tenn., 712; Bennett v. Wilkins, 45 Tenn., 240; Lowry v. Naff, 44 Tenn., 372; McNairy v. Nashville, 61 Tenn., 251; Dean v. Snelling, 49 Tenn., 484; Kirkman v. Snodgrass, 40 Tenn., 370; Falls v. Building & Loan Association, 105 Tenn., 24; Baker v. Mitchell, 105 Tenn., 610-612.

5. **COURTS.  Equity.  "Jurisdiction."  Consent.  Waiver.**

"Jurisdiction" is the power constitutionally conferred upon a judge or magistrate to determine causes according to law and carry his sentence into execution; hence as the act of 1877 (Shannon's Code, sec. 6109), specifically excepts certain causes from the jurisdiction of court of chancery, a party cannot, even by express waiver or consent, confer upon that tribunal jurisdiction to hear the excepted causes.   (*Post, p.* 100.)

6. **BAILMENT.  Degree of care.**

A bailee for hire is required to exercise only ordinary care, which is that which a capable person engaged in the same work is accustomed to exercise.   (*Post, p.* 101.)

Case cited and approved:   Lancaster Mills v. Merchants' Compress Co., 89 Tenn., 1-33.

7. **EQUITY.  Warehousemen.  Injuries to property.  Liquidated Damages.**

Where a warehouseman stored eggs, issuing a receipt stating that the property was stored at the owner's risk, that its condition and quality were unknown, but that it would be returned to the owner at his request, the contract is a mere bailment for hire, obligating the bailee to use ordinary care, and the law cannot by implication raise an agreement on the part of the warehouseman to return to the owner eggs of good and merchantable quality, or to pay the difference between

Swift & Co. v. Warehouse Co.

the market value of stored eggs of good quality and the value of the eggs actually redelivered; hence an action for damages to the eggs stored is necessarily one for unliquidated damages.   (*Post, p.* 101.)

8. **LIMITATION OF ACTIONS.   New action after reversal.**

Under Shannon's Code, sec. 4446, providing that if an action is commenced within the time limited, and judgment is rendered against the plaintiff upon any ground not concluding his right of action, or is reversed on appeal, he may commence a new action within one year, defendant, who secured a reversal because the action was improperly brought in the court of chancery, will be enjoined by the decree of reversal from setting up the defense of limitations against a new action begun within the year.   (*Post, p.* 102.)

Code cited and construed:   Sec. 4446 (S.); sec. 2755 (T. & S. and 1858).

Cases cited and approved:   Smith v. McNeal, 109 U. S., 426, 3 Sup. Ct., 319, 27 L. Ed., 986; Cole v. Nashville, 45 Tenn., 639; Railroad v. Pillow, 56 Tenn., 248; Love v. White, 5 Tenn., 210; Chilton v. Scruggs, 73 Tenn., 313; Hughes v. Brown, 88 Tenn., 578.

---

## FROM SHELBY.

---

Appeal from Chancery Court, Shelby County.—F. H. HEISKELL, Chancellor.

HENRY CRAFT, for appellant.

MARION G. EVANS and JAMES H. MALONE, for appellee.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

This was an action for damages for breach of a contract of bailment. The bailment was for hire. Swift & Co. was the bailor; the warehouse company was the bailee. The subject-matter covered by the contract was about 6,000 cases, or 2,160,000 eggs.

The complainant was an Illinois corporation; the defendant, a Tennessee corporation. The former was engaged in the business of buying and selling meats, eggs, and other products of similar character; the latter was conducting a cold storage warehouse business in Memphis, Tenn. Such was the business of the respective parties at the time of the bailment and the alleged breach of the contract sued on.

The bill was met by a demurrer raising the question that the chancery court was without jurisdiction because the action was one to recover unliquidated damages for injury to the property of complainants. This demurrer the court overruled, to which action of the court defendant excepted, and thereafter answered the bill and made demand for a jury to try the issues joined, whereupon the cause was submitted to a jury under issues stated in the charge of the court. At the close of complainant's evidence in chief, defendant moved the court to dismiss for want of jurisdiction upon the same ground relied on in the demurrer. This motion the court overruled, and defendant excepted, and, thereupon the cause proceeded to verdict, which

was in favor of complainant and for the sum of $7,151.18. From the decree based on this verdict, defendant appealed and has assigned many errors, the first of which is in substance that the chancery court was without jurisdiction, and that the chancellor was in error in his rulings to the contrary. The disposition of this assignment of error necessitates a review of Acts 1877, ch. 97, now carried as section 6109, Shannon's Code, and our decisions thereon.

In the outset, it may not be amiss to observe that, upon analysis, it is manifest that the act of 1877 extended the jurisdiction of the chancery court to all civil causes of action theretofore triable in the circuit court with three exceptions, and these exceptions were such cases involving unliquidated damages when based on (1) injuries to person; (2) injuries to property; (3) injuries to character.

The words "all civil causes of action" as used in the act have been construed by this court to mean only those civil actions which could have originated in the circuit court; the purpose of the act being to give litigants the option of bringing suits in such cases either in the circuit court or in the chancery court. *Simmons v. Leonard,* 89 Tenn., 623, 15 S. W., 444.

The jurisdiction conferred by the act was concurrent and not exclusive. The act did no more than open the door of the chancery court to a class of cases against which that door had formerly been closed. The door remained closed to the three classes of cases above noted as exceptions.

Notwithstanding the apparently plain terms of the act, its practical application has provoked much discussion.

Its constitutionality was assailed and sustained in *Jackson* v. *Nimmo,* 71 Tenn. (3 Lea), 597. Of it Judge Freeman, in delivering the opinion of the court in that case, said: ''The intention of the legislature is plainly expressed. It is to increase the jurisdiction of the chancery court. That increase is to be effected by giving the chancery court jurisdiction, concurrent with the circuit court, in all causes of action now triable in the circuit court, except injuries to person, property or character, involving unliquidated damages. This statement of what is the intention of the legislature, taken from the language of the act of itself is so clear and plain that we cannot misunderstand it, and find no need of the application of rules of construction. It cannot be made clearer or plainer than the act has made it.''

The case last cited was decided at the December term, 1879. At the preceding September term this court had under consideration the case of *Ramsey* v. *Temple,* 71 Tenn. (3 Lea), 252. In that case the bill was filed in the chancery court to recover damages of an attorney for ordering an execution held up, from which action it resulted that complainant lost the amount of the judgment on which execution was issued. The court did not in that case pass upon the validity of the act, but held that it should be strictly construed, and, speaking of the case there in judgment, said:

"The acts complained of are certainly in the nature of torts. 'An injury to property' in its broadest sense would certainly include any tort injuring or destroying a chose in action, or rendering it valueless by defeating or obstructing the plaintiff in its collection. From the very nature of the acts complained of, the damages are unliquidated and unfixed by the contract. They may be greater or less according as the extent of the injury may be shown by the proof; and the character of the question is not changed by the allegation that the injury complained of has resulted in the loss of the entire debt. This allegation does not render the damages in their nature liquidated or certain."

The demurrer to the bill in that case was sustained, and the bill dismissed.

In a later case, *Williams* v. *Burg*, 77 Tenn. (9 Lea), 459, where a bill was filed to recover damages for breach of a covenant of warranty in a deed, it was said:

"It is next argued that the demurrer should have been sustained upon the ground that the action sounds in damages, and is not such an action as the chancery court had jurisdiction of, even under our act of 1877. If this were true—which, however, it is not—still the chancery court has jurisdiction of even purely legal demands in attachment cases; the ground of attachment in this case being that the defendant is a non-resident."

So, in that case, the jurisdiction of the chancery court was sustained. Clearly it was not based upon an in-

jury to person, property, or character within the meaning of the act.

Following the case above cited, *Hawkins* v. *Kercheval,* 78 Tenn. (10 Lea), 542, was decided. The bill as amended in that case was a proceeding in substance to compel the mayor and police commissioners of a city to reinstate complainant in an office from which he had been suspended by the mayor and never legally removed by the commissioners. It was held that the mandamus sought by the bill was a form of civil action of which, by virtue of the act of 1877, the chancery court acquired concurrent jurisdiction, inasmuch as the action did not involve unliquidated damages for injuries to person, property, or character.

*Frazier* v. *Browning,* 79 Tenn. (11 Lea), 254, was an ejectment bill, and it was held by this court that of such a bill the chancery court acquired jurisdiction by virtue of the act of 1877. Clearly such a cause of action did not fall within any exception in the act of 1877.

In a later case, where the bill was based upon alleged negligence of the circuit court clerk in the discharge of his official duty, by which negligence complainant was deprived of the benefit of an execution which had been levied on 230 bushels of wheat, it was held that the case did not present an injury to property within the meaning of the act of 1877, and the concurrent jurisdiction of the chancery court under that act was sustained. *Glenn* v. *Moore,* 79 Tenn. (11 Lea), 256.

In another case, where the suit was based upon the failure of a county surveyor to properly survey a tract of land, by which failure complainants sustained a loss, it was held that the cause of action was not based on injury done to person or property within the meaning of the statute, as in the case of a trespass to the one or the other, but, on the contrary, that the case was based on a loss accruing by reason of an alleged breach of duty which could be measured by the value of the property lost. *State* v. *Keller,* 79 Tenn. (11 Lea), 401.

Again, where a principal sued his agent for a sum lost to the principal by the act of the agent in taking an invalid acceptance of a draft, it was said:

"The wrong complained of was not an injury to the person, character, or property of complainants within the meaning of the act of 1877."

The court in the same case passed upon the meaning of the term "unliquidated damages" as used in that act, saying:

"Strictly speaking, 'unliquidated damages' are such damages as have not been ascertained or fixed by contract." *Kirkeys & Son* v. *Crandall,* 90 Tenn., 532, 18 S. W., 246.

In *Ducktown Sulphur & Iron Co.* v. *Fain,* 109 Tenn., 65, 70 S. W., 813, a corporation which was a defendant in twenty-one suits at law, brought by sundry persons, each suit arising out of an injury alleged to have been sustained as a result of noxious gases emitted from roast piles of copper ores, sought by original bill to enjoin the twenty-one lawsuits and to have with each of

the separate plaintiffs in those suits a separate accounting in the chancery court; but this court held that the act of 1877 did not confer jurisdiction in such a case on the chancery court, and that, upon the contrary, the cause fell within the exceptions in that act.

In another case, where the complainant sought to recover from a national bank the statutory penalty for knowingly collecting usurious interest, this court held that, inasmuch as the cause would have been triable in the circuit court prior to the passage of the act of 1877, that act conferred jurisdiction on the chancery court. No mention was made in the opinion of the fact that such an action was in no sense one based on injuries to person, property, or character, though it must have been true that this fact was of controlling weight in the conclusion reached by the court in that case. *McCreary* v. *First National Bank,* 109 Tenn., 129, 70 S. W., 821.

Where the complainants sought by their bill a perpetual injunction restraining a smoke nuisance, and, in the alternative, damages for injuries caused by the smoke to certain property owned by complainants, this court said:

"Chapter 97 of the Acts of 1877 excepts from the jurisdiction of the chancery court cases of injury to property involving unliquidated damages. The chancery court obviously would have had no jurisdiction to determine this claim for damages, had it been presented alone," etc. *Bank & Trust Co.* v. *Hotel Co.,* 124 Tenn., 664-666, 139 S. W., 719, 39 L. R. A. (N. S.), 580.

Reverting now to the case in hand, it is clear that, among the cases cited where the jurisdiction of the chancery court has been challenged and sustained, there is not one which furnishes a precedent for the claim that the chancery court, by the act of 1877, acquired jurisdiction of such a cause of action as is presented by this record.   It is equally clear that this record does not present a case of equitable cognizance independent of the act of 1877.   It is manifest, from the contract as averred and proven, that the minds of the parties thereto never met touching the question of damages in the event certain of the eggs should be damaged by absorption of fruity flavors.   Therefore we must conclude that the damages sued for are purely unliquidated, unfixed, and uncertain.

"Liquidated damages" are thus defined by Bouvier:

"Damages, the amount of which has been determined by anticipatory agreement between the parties.   Damages for a specific sum, stipulated or agreed upon as a part of a contract as the amount to be paid to a party who alleges and proves a breach of it."   Bouvier's Law Dictionary, vol. 2, Rawle's Revision, 261.

To the same purport are a number of definitions and illustrations in volume 5, p. 4174, *et seq.,* Words and Phrases.

Upon the same subject, see also our own cases. *Ramsey* v. *Temple,* 71 Tenn. (3 Lea), 252; *Kirkeys & Son* v. *Crandall,* 90 Tenn., 532, 18 S. W., 246.

The contract called for the redelivery of the eggs by the bailee to the bailor when called for by the latter.

The bill avers that the redelivery was made. The claim for damages is predicated on alleged negligence of the bailee in permitting some of the eggs to absorb, while in storage, certain fruity flavors, which decreased their market value and otherwise damaged the bailor. The extent of this damage it is clear from the averments of the bill must depend wholly upon proof, and is certainly as unfixed, uncertain, and unliquidated as we can imagine anything to be.

Whatever may have been the extent of the injury to the market value of the eggs, arising from the negligence of the bailee out of the manner of storage, it is clear that such negligence according to the averments of the bill arises to the eminence of a wrong against the property rights of the complainant, and amounts to an injury to property within the act of 1877.

Therefore we think that the cause of action as presented by the bill, and as shown by the proof, involved unliquidated damages and was based on an injury to property within the meaning of the act of 1877, and that the chancellor was in error in his rulings to the contrary.

To fall within exception No. 1 of the act of 1877, the cause of action must involve unliquidated damages and be based on injuries to person. To fall within exception No. 2 of the act, the cause must involve unliquidated damages and be based on injuries to property. To fall within exception No. 3 of the act, the cause of action must involve unliquidated damages and be based on injuries to character.

Of a cause of action falling within any one of these exceptions the act confers no jurisdiction on the chancery court. The case in hand falls within the second exception above.

What we have said in this opinion on the subject of the jurisdiction of the chancery court has no application, of course, except to cases where the jurisdiction of that court over the particular case depends 'upon the act of 1877.

It results, of course, from these views, that the decree must be reversed, and the bill dismissed.

### ON PETITION TO REHEAR.

The petition to rehear refers us to the following cases: *Holcomb* v. *Canady*, 2 Heisk., 612; *Frazier* v. *Tubb*, 2 Heisk., 666; *Rankin* v. *Craft*, 1 Heisk., 712; *Bennett* v. *Wilkins*, 5 Cold., 240; *Lowry* v. *Naff*, 4 Cold., 372; *McNairy* v. *Nashville*, 2 Baxt., 251; *Dean* v. *Snelling*, 2 Heisk., 484; *Kirkman* v. *Snodgrass*, 3 Head., 370; also to sections 247 and 260, Gibson's Suits in Chancery, and to section 6131, Shannon's Code, which reads as follows:

"The filing of an answer is a waiver of objection to the jurisdiction of the court, and the cause will not be dismissed, but heard and determined upon its merits, although the court may be of opinion that the matters complained of are of legal cognizance."

This section appeared in substance as section 9 of chapter 365 of the Acts of 1851-52, in these words:

"Sec. 9. Be it enacted, that, where an answer is made to a bill in equity, it shall be a waiver to any objection to the jurisdiction of the court; and although the matter complained of is, in the opinion of the court, a matter of legal jurisdiction, the chancellor shall decree relief according to the law without dismissing the bill, and, in case of any dispute as to the matter of fact, either party shall be entitled upon application to a trial by jury."

Section 6131, as it appears in Shannon's Code, was section 4321, Code 1858.

The reason, no doubt, underlying the holding of this court in *Holcomb* v. *Canady*, 2 Heisk., 612, cited supra, and other cases of that line, to the effect that the filing of an answer was a waiver of objection to the jurisdiction of the chancery court over the persons of the parties litigant, as well as over the subject-matter of the suit, was that by the passage of the ninth section of the act of 1851, and section 4321 of the Code of 1858, the legislature had expressly conferred jurisdiction upon the chancery court to try matters of legal cognizance where objection to its jurisdiction so to do had been waived by the defendant by filing an answer to the bill; and manifestly the reason underlying those decisions was sound, and, if our legislation stood to-day as it did at the time of the rendition of those decisions, we would have no difficulty in following those cases in the disposition of the question in this case. But it is to be observed that all of the cases above cited were decided before the passage of chapter 97 of the Acts of

1877. This act wrought a very material change in, and a distinct and considerable enlargement of, the jurisdiction of the chancery court. Under the act of 1877, the party complaining may as of right invoke the jurisdiction of the chancery court in all civil causes of action within the meaning of that act theretofore triable in the circuit court, with the exceptions noted in our original opinion in this case; and by the act of 1877, the right is taken away from the defendant to object to the jurisdiction of the chancery court because the subject-matter is of legal cognizance, if it be true that the complaint is a "cause" within the meaning of the act, and not upon its facts falling within one of the three exceptions noted in our original opinion in this case.

The act of 1877 is a distinct repeal by implication of the jurisdiction of the chancery court conferred by section 9 of the act of 1851-52, and by section 4321 of the Code of 1858, and now carried as section 6131, Shannon's Code, to pass upon the merits of all causes where objection to its jurisdiction is waived by answer, "although the court may be of opinion that the matters complained of are of legal cognizance," because that jurisdiction cannot stand together with the exceptions noted in the act of 1877. This act clearly means that the chancery court shall not have jurisdiction to render any decree on the merits of a civil cause of action within any one of the exceptions noted in it. The former legislation is inconsistent with this meaning of the act of 1877, and was impliedly repealed by the latter act.

128 Tenn. 7

But we are not to be understood as holding that anything in the act of 1877, either expressly or by implication, repealed section 4321, Code of 1858, now section 6131, Shannon's Code, in so far as that section now has the effect of providing that the filing of an answer is a waiver of objection to the jurisdiction of the chancery court over the person of the defendant or the "local *status*" of the "litigation," or in a case of equitable cognizance, such as *Falls* v. *Building & Loan Association,* 105 Tenn., 24, 58 S. W., 325, or we may safely add in any case where the application of section 6131, Shannon's Code, would not operate to assert jurisdiction of the chancery court to pass on the merits of a cause excepted from its jurisdiction by chapter 97 of the Acts of 1877.

The view of our legislation herein set out explains an apparent conflict between the line of authorities relied on by petitioner, and cited supra, and what was said by this court through Mr. Justice Wilkes in *Baker* v. *Mitchell,* 105 Tenn., 610-612, 59 S. W., 137, 138, where the precise question was whether the defendant, who raised the question of the jurisdiction of the court by filing a demurrer but also at the same time filed an answer, had by the filing of the answer waived the right to insist on his demurrer. The court said:

"We are of opinion that the question as to jurisdiction in this case is one based upon the subject-matter of the controversy, and not the person of the defendant or the local *status* of the litigation, and that it could be made at any time" (citing *Lowe* v. *Morris,* 4 Sneed,

69; *Merchant* v. *Preston,* 1 Lea, 280; *Starnes* v. *Newsum,* 1 Tenn. Ch., 245).

And, continuing, the court said: "Indeed, the want of jurisdiction of the subject-matter could not be waived, nor could it be conferred by consent, appearance, plea, or answer, if it does not exist by law. See cases collated Webb & Meigs' Digest, p. 2058, sec. 11."

The subject-matter of the litigation in that case was the right to the office of mayor of the town of Greenville, Tenn. The action presented was an election contest, and the claim that jurisdiction existed in the chancery court to try the case was based on chapter 97, Acts of 1877; but it was held that the jurisdiction did not exist, for the reason that "a proceeding of this character" is not a "cause" within the meaning of that act. We cannot doubt but that the court in the consideration of that case noted the exact distinction which we have pointed out in this opinion between the legislation effected by the act of 1877 and that on which the cases rest upon which petitioner relies.

What we have said is our response to the insistence made by petitioner that the answer of defendant in this case amounted to a waiver of its objection to the jurisdiction of the chancery court over the subject-matter of this suit.

We hold that under the act of 1877 the filing of the answer was no bar to the right of the defendant in this case at the conclusion of complainant's evidence to move the court to dismiss the suit for want of jurisdiction. Even the express waiver or consent of defendant

would not have conferred jurisdiction on the court over the subject-matter of this suit.

Jurisdiction has been well defined to be a power constitutionally conferred upon a judge or magistrate to take cognizance of and determine causes according to law and to carry his sentence into execution. Cyc., vol. 11, p. 660.

That power, under the facts of this case, the chancery court did not have. The cause of action was for damages unliquidated by the contract of the parties, and unliquidated by anything they said or did after the contract of bailment was made. No rule of law will operate to liquidate damages, unless there be words or acts of the parties to the contract in evidence from which it may fairly be implied that the amount, or a basis for computation of the amount, of the damages was agreed upon by the parties. The law does not *sua sponte* make contracts for parties, nor liquidate damages, where the parties by their acts and words have left the question open.

Although a contract of bailment much different was averred in the bill, when complainant's proof was in, it was clear that the actual contract entered into by the parties was that, for the price of thirty cents per case per season, the bailee received the eggs and issued a warehouse receipt for each case, stating in substance that the property was stored at the owner's risk, that its condition and quality were unknown to the bailee, and that it would be returned to the owner at his request upon payment of storage and other charges.

Under such a contract, the warehouse company was a mere bailee for hire, held only to exercise ordinary care, or "the care and diligence which good and capable warehousemen, experienced and faithful in the particular department are accustomed to exercise when in the discharge of their duties." *Lancaster Mills v. Merchants' Compress Co.*, 89 Tenn., 1-33, 14 S. W., 317, 324 (24 Am. St. Rep., 586).

Now, when the written receipt upon which each case of eggs was stored shows that the "condition and quality of the eggs" was a fact unknown to the warehouseman, how can the law by implication raise a contract binding it to return to the bailor at his request eggs of good and merchantable quality, and, in the event of his failure so to do, that he will pay to the bailor the difference between the market value of storage eggs of good and merchantable quality and the market value of the eggs at the time of redelivery? The law implies no such contract. It makes no unjust implication, none which will aid one party in the perpetration of fraud upon the other. If the condition and quality of the eggs had been known to the bailee at the time of storage, the law would raise the implication above stated, but not otherwise.

So it is idle in the face of these facts to insist that any rule of law liquidated the damages under the facts of this case.

It is equally clear that this suit was based upon an injury to property within the meaning of the act of 1877. It is said the injury arose out of a breach of the

contract alleged by the bill; but this, if true, does not destroy or minimize the existence of the fact that the basis of the suit is an alleged injury to property, and that the damages sought flow from such injury.

It is not within our rights to bend the law to meet hard cases. It is our duty to administer it as written. The petition to rehear presents no new matter, except the one fully discussed in the first part of this opinion.

But the decree of this court dismissing this suit will enjoin the Memphis Cold Storage Warehouse Company from setting up or relying on the statute of limitations as a defense to such suit upon the merits of this cause in the circuit court of Shelby county, Tenn., as Swift & Co. may commence within one year from the date of the above decree (*Smith* v. *McNeal,* 109 U. S.. 426, 3 Sup. Ct., 319, 27 L. Ed., 986; *Cole* v. *Nashville,* 5 Cold., 639; *Railroad Co.* v. *Pillow* 9 Heisk., 248; *Love* v. *White,* 4 Hayw., 210; *Chilton* v. *Scruggs,* 5 Lea, 313; *Hughes* v. *Brown,* 88 Tenn., 578, 13 S. W., 286, 8 L. R. A. 480; Code 1858, sec. 2755; Shannon's Code, sec. 4446); it being our opinion that, under the provisions of the above statute and the facts of this case, the complainant is entitled to the injunction above awarded.

The petition to rehear will be dismissed, and decree entered dismissing this suit as announced in our original opinion.