PERCY DAFOE, et al. v. CHARLES STAREK, et al.

Middle Section.    March 1, 1929.

Petition for Certiorari denied by Supreme Court, June 15, 1929.

Charles L. Neeley and William H. Hall, of Memphis, and Worth Bryant and J. A. Drake, of Cookeville, for appellant, Guaranty Company.

P. J. Anderson and L. G. Strode, of Gainesboro, for appellee, DaFoe.

CROWNOVER, J. This was a suit by the complainants DaFoe against defendants Starek and the United States Fidelity and Guaranty Company upon injunction bonds for the wrongful suing out of an injunction which stayed the foreclosure of a deed of trust on oil leases of lands known as Tinsley Bottom in Clay and Jackson counties, Tennessee. The bonds were executed and filed in the case of Charles Starck v. Percy DaFoe, et al., in the chancery court at Gainesboro, Tennessee.

The defendant Guaranty Company demurred because the injunction bonds sued on were conditioned that liability be determined and adjudicated in the original cause in which the injunction was sued out and the bonds executed. The demurrer was overruled with the right to rely on the same in the answer, and said Guar·

anty Company then filed its answer again relying upon its demurrer, and further defended on the ground that the final decree was rendered in the injunction suit without awarding any decree or adjudging any liability against the defendants in the original injunction suit, as required by the conditions of the injunction bonds, and therefore the court had no jurisdiction in this cause to render judgment against the defendants on the injunction bonds. The defendant Guaranty Company further pleaded that there was no depreciation in the value of the oil leases while the injunction was in force, and denied liability for any damages on account of the depreciation in the value of the property.

The defendant Starek answered, admitted the filing of the original injunction suit and the execution of three bonds with the defendant Guaranty Company as his surety on said bonds; but denied liability for the same reasons relied upon by the Guaranty Company.

The case was tried by the Chancellor and a jury upon special issues submitted to the jury, which issues were:

(1) What damages, if any, were sustained by Percy DaFoe by reason of the wrongful suing out of the injunction?

(2) Was Percy DaFoe the sole beneficiary under said deed of trust?

The jury after hearing the evidence answered the first issue, "$12,500," and the second issue "Yes."

The defendants' motion for a new trial was overruled and the Chancellor rendered a decree in favor of Percy DaFoe against Charles Starek in the sum of $15,782.04; a decree in favor of Percy DaFoe against the Guaranty Company for the sum of $12,500; and a decree in favor of W. F. DaFoe, trustee, against Charles Starek for $1810. He further provided that in the event of the collection of the decree in favor of Percy DaFoe against either of the defendants the amount so collected should be credited on the decree against the other.

The defendants' motion for a new trial being overruled, the Guaranty Company appealed to this court and has assigned four errors which are in substance that the court erred:

(1) In overruling appellant's demurrer because the injunction bonds only provided that liability should be adjudicated in the original suit and not in an independent suit and therefore the bill shows no breach of the conditions of the bonds.

(2) Because this is a suit for unliquidated damages and therefore the court has no jurisdiction of the controversy.

(3) "The court erred in giving appellee DaFoe a decree against the appellant Guaranty Company for $12,500, the evidence establishing no breach of the bonds, and the verdict of the jury finding DaFoe to have been damaged in the sum of $12,500 being unsupported by the evidence."

(4) Because there was no liability on the $2500 bond, as

the court had no jurisdiction, and because there was no liability on the bond for damages that had accrued, as this bond was not an increase of the penalty of the injunction bond, but was conditioned upon the successful prosecution of an appeal. Liability on the bond never attached as the appeal was not perfected.

The facts necessary to be stated are that on February 9, 1927 Percy DaFoe sold and conveyed by deed to Charles Starek certain oil leases on several hundred acres of land known as the Tinsley Bottom in Clay and Jackson counties, Tennessee, for the consideration of $18,500, of which $400 was to be paid in cash, and the balance $18,100 was evidenced by six notes payable to Percy DaFoe and to mature from February 20th to June 1st, 1927. On the same day Starek executed a deed of trust to W. F. DaFoe, trustee, on said leases to secure the said six notes, and it was provided that upon default in the payment, the trustee was to advertise and sell said property in the bar of the equity of redemption.

Defendant Starek gave to complainant Percy DaFoe his check for $400, which was dishonored for want of funds, and the defendant Starek defaulted in the payment of said notes. The trustee attempted to foreclose the deed of trust, and the property was advertised for sale to be had on April 4, 1927.

On that date, just before the sale, the defendant Starek prepared a bill that he presented to the Chancellor and obtained a fiat for an injunction enjoining the foreclosure of said mortgage and the sale of said property. In his bill he alleged that by oversight a valuable lease of several acres of land known as the Swan lease had been left out of the conveyance, and he prayed that DaFoe be required to execute a conveyance of said Swan lease to him, and also file the powers of attorney authorizing the sale.

The defendants answered said bill denying that the Swan lease was to have been included in the conveyance, and alleged that complainant's bill was not filed in good faith but was for the purpose of delay, but stated that if the complainant Starek would pay the deferred payments they would execute to him a conveyance of the Swan lease, and deliver all powers of attorney.

Later complainant Starck filed an amended bill alleging that he understood DaFoe's title to the leases was defective, and he prayed for rescission in the event this was true.

The injunction was granted upon a fiat requiring the execution of a $500 bond. This bond was executed by complainant Starek with the defendant Guaranty Company as surety, and the injunction prohibiting the sale was issued.

The defendant gave notice of motion to dissolve the injunction, and on April 18, 1927 the Chancellor sustained the motion to dissolve the injunction, "unless bond in the sum of $10,000, that is,

injunction bond in the sum of $10,000 is executed and delivered to and approved by the Master not later than noon of April 25, 1927, the injunction will stand dissolved."

On April 23, 1927 the complainant executed the $10,000 bond with the defendant Guaranty Company as its surety, which bond was conditioned "to be void if the said Charles Starek shall with effect prosecute an injunction suit which he has commenced against said Percy DaFoe and W. J. DaFoe in the chancery court at Gainesboro, Tennessee, or in case of failure, shall pay said debt, costs and damages as shall be awarded by the court on dismissing said bill."

Proof was taken and the case was tried at chambers, by agreement, by the Chancellor sitting as a jury on June 15, 1927, when the court held that complainant's primary purpose in bringing the suit was to secure delay, and, that, in fact there was no justification for the bringing of the suit, and he therefore dismissed the bill and dissolved the injunction. The order dissolving the injunction is as follows:

"The injunction in the cause will stand dissolved and defendants left free to proceed under their trust deed, except and unless complainant shall file with the Master an approved additional injunction bond in the sum of $2500 within twenty days, when such bond shall be filed, then, upon failure of complainant to perfect his appeal within the time hereinafter allowed, they will likewise be left free to proceed with the execution of their deed of trust on the property involved."

The complainant Starek's motion for a new trial being overruled, he prayed an appeal, which was granted upon the condition that he execute an appeal bond as required by law.

The complainant Starek executed the $2500 additional injunction bond on June 20, 1927, with said Guaranty Company as surety, conditioned "to be void if the said Starek shall with effect, prosecute an injunction suit which he has commenced against the said Percy DaFoe, et al., in the chancery court at Gainesboro, Tennessee, or, in case of failure, shall pay such debt and damages as shall be awarded by the court on dismissing said bill."

But said Starek did not execute an appeal bond and never perfected his appeal and is insolvent.

On August 13, 1927, the deed of trust was foreclosed and the property was sold to Percy DaFoe for $3500, and he thereafter sold said property for $8700, but the expenses of the sale amounted to $150 and he received $8550 net for the property.

On October 19, 1927, Percy DaFoe and his brother W. F. DaFoe filed this bill against the defendant Starek and said Guaranty Company seeking a recovery on said bonds for the unlawful suing out of the injunction which stayed the foreclosure sale of said property under said deed of trust, with the result hereinabove stated.

The first assignment of error, that the court erred in overruling appellant's demurrer because the injunction bonds only provided that liability should have been adjudicated in the original suit and not in an independent suit, and that the bill showed that there were no breaches of the conditions of the bonds, is not well taken for two reasons; first, there is nothing in the bonds that limits the suit to that court, nor does it provide an exclusive remedy for the breach of the contract. We think that a fair construction of the clauses in the bonds: "Or in case of failure shall pay said debt, costs and damages as shall be awarded by the court on dismissing said bill" means, that the parties will pay whatever damages and costs that may be awarded by the court in which the suit is brought after the dismissal of the bill. It has been held by our Supreme Court that the term in the statute, with respect to conditions in injunction bonds "to abide by and perform the decree which may be made in the cause," means that the surety, where money is decreed, shall be liable for the amount of the decree; and the court should apply the indemnity of the bond taken under its orders to secure the party, but its omission to act or refusal to entertain a motion will not discharge the sureties, or oust other courts of jurisdiction against them on proper suits. See Phillips v. Landess, 152 Tenn.. 690. 280 S. W.. 694; Black v. Caruthers, 6 Humph., 87.

Of course the injunction bond should be conditioned as prescribed by the statute, where the statute is applicable (Shannon's Code. secs. 6256 and 6298) or in form prescribed by the fiat of the judge or Chancellor applicable to the case (Pyott Land & Mining Co. v. Tarwater. 126 Tenn.. 601, 150 S. W. 539) but in the absence of legislation or specific orders made in the fiat, we are compelled to regard the bond as taken, within the legal competency of the judge to order it. and the clerk to take it. See Black v. Caruthers, 6 Humph., 87-91. Hence in the absence of specific orders in the fiat, we must take the bond as we find it, and cannot read anything into it or out of it: but, we are of the opinion that by a fair interpretation of the conditions of the bonds the rights of the parties are not confined to the adjudication made in the original cause, and the failure of the court in the original cause to adjudicate the liability of the parties did not oust the chancery court of jurisdiction against them in this suit.

Second. we are of the opinion that had the parties attempted to limit the jurisdiction about the matter to the original cause such an agreement would have been against public policy and not enforcible. Agreements the object of which is to oust the jurisdiction of the courts are contrary to public policy and will not be enforced. 13 C. J.. 455; 3 Williston on Contracts, sec. 1725. It has been held in numerous cases that where companies attempted in

insurance policies and other contracts to limit suits to particular courts, such clauses in the agreement are contrary to public policy and such clauses will not be enforced. Mutual Reserve Fund Life Association v. Cleveland Woolen Mills, 82 Fed., 508. Hence this assignment of error must be overruled.

However it is insisted that the bill shows no breach of the conditions of the bonds. We think there is nothing in this contention, as the dismissal of the bill and the dissolution of the injunction, especially where the court held that there was no justification for the suit, were conclusive that the injunction was wrongfully sued out. See 2 Sutherland on Damages (4 Ed.), 1747, sec. 527; Sturges v. Hart, 45 Ill., 105.

The second assignment of error raises the proposition that this is a suit for unliquidated damages and therefore the court had no jurisdiction of this controversy. We think there is nothing in this proposition. The Act of 1877, chapter 97, as amended by chapter 47 of the Acts of 1915, Shannon's Code, sec. 6109, provides: "It (chancery court) shall have and exercise concurrent jurisdiction along with the circuit court, of all civil causes of action, triable in the circuit court, except for unliquidated damages for injuries to person or character, and except for unliquidated damages for injuries to property not resulting from a breach of oral or written contract; and no demurrer for want of jurisdiction of a cause of action shall be sustained in the chancery court except in cases hereinafter excepted."

The scope of the Act of 1877, chapter 97, was broader than was sometimes thought. By it the chancery court was given jurisdiction of all civil causes of action triable in the circuit court, except for injuries to the person, property or character involving unliquidated damages. By chapter 47 of the Acts of 1915, the original act was amended so as to read "Of all civil causes of action triable in the circuit court, except for unliquidated damage, for injuries to person or character, and except for unliquidated damages for injury to property not resulting from a breach of oral or written contract." In other words, by this Act, the chancery court was given jurisdiction of suits for unliquidated damages for injuries to property growing out of the breach of oral or written contract. This is a suit on the injunction bonds. An injunction bond is nothing more nor less than a contract. See Ureka Sand Stone Co. v. Long, 11 Wash., 166, 39 Pac., 446. An action on a bond is an action of debt or covenant, See 9 C. J., 82, sec. 145. An action against the Guaranty Company is an action ex contractu (1 C. J., 1019). If it had not contracted in the bond it would not be liable. An action ex contractu is for the breach of a duty arising out of a contract either expressed or implied. (1 C. J., 1013) and is determined by the pleading. (1 C. J., 1015.)

Before the Act of 1915 the chancery court had jurisdiction of actions for damages on bonds of clerks for taking insufficient bonds whereby the property levied on was lost. See Swift v. Warehouse Co., 128 Tenn., 90, 158 S. W., 480. Hence we think there is nothing in this assignment of error and it must be overruled.

The third assignment of error is that the court erred in giving appellee DaFoe a decree against the appellant Guaranty Company for $12,500 as the evidence established no breach of the bonds, and the verdict of the jury finding DaFoe to have been damaged in the sum of $12,500 was not supported by the evidence. Under this assignment of error it is insisted that the evidence showed no loss of opportunity to sell the property on April 4, 1927 as the witnesses did not state that they would have paid $18,500, hence there was not ample evidence of the loss of an opportunity to sell; and it was further insisted that there was no material evidence of the depreciation of the value of the property between April and August, 1927, as the prices were inflated by reason of a tremendous oil excitement which rendered the value speculative, and it was further insisted that the foreclosure sale for $3500 was no evidence of value of the property.

The measure of damages is the depreciation in the value of the property while subject to an injunction prohibiting its sale. See Gibson's Suits in Chancery, revised edition, sec. 863; 2 High on Injunctions (4 Ed.), secs. 1671, 1674; 32 C. J., 469-470, 481.

Where the injunction was to prevent the defendants from selling or disposing of goods, the amount properly recoverable in an action on an injunction bond, is the depreciation or loss of value of the goods during the operation of the injunction, not exceeding the penalty of the bond, with interest from the time of the institution of the suit. Where the injunction caused the delay and the delay resulted in loss, the injunction is the efficient cause of the loss. See Levy v. Taylor, 24 Md., 282, 292; Meysenburg v. Schlieper, 48 Mo., 426, 431; Bolling v. Tate, 65 Ala., 417, 429; Mansell v. British Lien Co. Bank, 3 Ch., 159; Ripley v. Mosly, 57 Me., 76; Slack v. Stephens, 19 Colo. Apps., 538; 16 Am. & Eng. Ency. of Law (2 Ed.), 466. In other words, the damage is the difference between the value of the property at the time when the bond was given and its value at the time the injunction was dissolved, with interest. 2 Sutherland on Damages (4 Ed.), 1749, sec. 528. Where one lost the sale of land in consequence of the issuance of an injunction against him, he may recover to the extent of the depreciation in the market price or value; but he must show that he had bona fide applications to buy and probably would have sold, and that the failure to sell was fairly attributable to the injunction. See Sturges v. Hart, 45 Ill., 103; Reece v. Northway, 58 Ia., 187.

After a careful examination of the record we are of the opinion that there was a loss of opportunity to sell for $18,500 to $20,000, as the proof shows that one party in the latter part of March, 1927, offered to buy the property at $18,500 and even sent Percy DaFoe to Ohio to interview the defendant Charles Starek with the view of consummating the deal. That was turned down and the deal was not made. Another party in April, 1927 had an agreement with the complainant in this case to buy the property for $20,000, but the deal could not go through on account of the injunction. The witnesses testified that the property was worth $18,500 at the time the injunction was served on April 4, 1927, and that it depreciated in value considerably because some of the leading oil men had left that community, and it was sold at auction on August 13, 1927, for $3500 to the complainant, who later sold it for $8550 net; hence we are of the opinion that the property would probably have been sold for $18,000 had not the injunction been served. We do not think the case of South Pen Oil Co. v. Stone, 57 S. W., 374, is applicable, first, because there was no offer made to buy that property after the injunction bill was filed; and second, because the proof conclusively showed in that case that the Oil Company had put down a well and found that the land contained no oil, hence the oil leases were worthless. The situation is different in the case at bar. There were some producing wells on this property and witnesses state that the property was worth $18,000 when the injunction was served, but the leases depreciated in value because the chief oil companies had left that section.

However it is insisted that there is no material evidence of the depreciation of the value of the property during the pendency of the injunction, and that the property was valueless at the time the injunction was sued out. As above stated we think that this contention is not well made, as the property materially depreciated in price during that time.

But is is further insisted that the price of $3500 bid at the foreclosure sale is no evidence of value, and does not show the true depreciation in the value of the property. We are of the opinion that this proposition is well made. Ordinarily the price obtained at a foreclosure sale is not evidence of the true value of the property. See Leavitt v. Lusch. 192 Ill. Apps., 504.

. The complainant Percy DaFoe bought in this property for $3500 and shortly thereafter sold it for $8550 net, hence he was not damaged $12,500. The proof is that he could have sold the property for $18,000 when the injunction was served and he obtained $8550 for the property when he sold it, which made him sustain a loss of $9450 on account of the wrongful suing out of the injunction, and we think that he is entitled to recover this $9450, together with

interest from April 4, 1927. He sold the property for $8550, hence it evidently was worth that when he purchased it at the foreclosure sale. In the case of a commodity brought and sold in the open market evidence of actual sale at a certain price is sufficient to establish that such was the market price. 23 C. J., 57, and this is sufficient evidence to make out a prima facie case against the wrongdoer, and in the absence of proof to the contrary, may be said to furnish evidence of the market value in favor of the party who sold the property. See Pepper v. Telegraph Co., 87 Tenn., 553, 573-574, 11 S. W., 783. At all events the complainant is only entitled to recover what he was actually damaged, and should not be permitted to take advantage of and make profit out of the wrong.

Some question might be made that the bond is conditioned to pay "the debt, damages and cost," and therefore complainant would be entitled to recover his debt, but in any event he could only recover what was due him. Where, however, a bond is given by a stranger to a judgment to secure an injunction against the sale of a particular article of property, such bond, whatever may be its conditions, operates in equity only as security to the party enjoined, for any injury that may accrue, and not for the amount of the debt. See 16 Am. & Eng. Ency. of Law (2 Ed.), 444; Hammond v. St. John, 12 Tenn., 106; 2 High on Injunctions (4 Ed.), sec. 1623.

Hence we hold that there is no evidence to sustain a verdict in favor of the complainant against the Surety Company for more than $9450, with interest from the date of the service of the injunction on April 4, 1927, and this assignment of error is sustained to this extent.

The ten thousand dollar bond being sufficient to cover this decree the fourth assignment raising the question as to the liability on the $2500 bond becomes immaterial, and it is not necessary for us to pass on this proposition.

Finally, it is insisted that the complainant cannot recover as it is not shown that he was the sole owner of the oil leases. As we view it this question is immaterial. The deed of trust on the oil leases was executed by defendant Starek to W. F. DaFoe, trustee, to secure the deferred payments which were evidenced by notes payable to Percy DaFoe, which deed of trust the trustee proposed to foreclose and he was enjoined by Starek. None of the other parties were known either in the deed of trust or in the notes; and as DaFoe had the legal title he is entitled to recover. Starek is estopped to deny that DaFoe had the title as he conveyed it to him in the deed of trust. See 21 C. J., 1068-1069; Ruffin v. Johnson, 5 Heiskell, 604; James Knox v. Jack Keith, Hamilton County Equity, 9 Tenn. App., 614; 47 C. J., 22-3. It results that there is nothing in this contention.

It results that all the assignments of error are overruled, except a portion of the third assignment of error, and we hold that the com-

plainant Percy DaFoe is entitled to recover a decree against the U. S. Fidelity & Guaranty Company and the surety on its appeal bond for $9450, together with interest from April 4, 1927, $1086, making a total of $10,536, and the cost of the cause, including three-fourths of the cost of the appeal. The other one-fourth of the cost of the appeal is decreed against Percy DaFoe. This being a jury case, we suggest a remittitur of the decree to this extent. In the event the complainant will not accept this remittitur, then the decree will be reversed and the cause remanded for a new trial.

Faw, P. J., and DeWitt, J., concur.